CASE 77—ACTION TO RECOVER DAMAGES FOR PERSONAL INJURIES—
OCT. 9.

# Louisville & Nashville R. R. Co. v. Hocker.

### APPEAL FROM BOYLE CIRCUIT COURT.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS.   REVERSED.

111   707
f126   615
126   621

111   707
e130   185
130   187

RAILROADS—EMPLOYE—TRESPASSER—DUTY OF COMPANY—CONTRIBU-
TORY NEGLIGENCE.

Held:   1. A railroad company owes to unauthorized persons in its
switch yards no duty except to exercise ordinary care to avoid
injury to them after their peril is discovered.

2. Though plaintiff, a train dispatcher, had the right to cross at one
place in a switch yard the tracks of defendant railroad com-
pany by which he was employed in order to reach a water closet
provided by defendant for its servants, that did not give him
the right to go between cars at another place to urinate, and,
having gone there for his own convenience, and not in the
discharge of any duty, the company owed him no duty except
to avoid injuring him after discovering his peril; and the mere
fact that it was possible for the trainmen to see a part of his
body which was not concealed was not sufficient to authorize
the submission to the jury of the question whether they did
see him, when there was no reason to expect his presence there.

3. Even though defendant was negligent, the contributory negligence
of plaintiff was so great as to preclude him from recovering.

C. R. McDOWELL AND EDWARD W. HINES, FOR APPELLANT,
(WALKER D. HINES, R. P. JACOBS, H. W. BRUCE, JOHN W.
YERKES AND B. D. WARFIELD, OF COUNSEL.)

At the time appellant was injured, he was employed as tele-
graph operator in appellant's yard at Latonia. He left his office
to go to dinner, intending, as he says, to first go to the water
closet used by the employes in the yards. The way provided
from his office to the closet was down a screenings walk to
South avenue, crossing four or five tracks. At this point a
watchman was stationed for the protection of persons crossing.
Plaintiff took a shorter route. After crossing two tracks he
concluded to step between some cars to urinate instead of go-
ing to the closet. While standing between the cars, other cars
were shoved against them in making a switch, and he was
knocked down and injured.

The fact that he had the right to cross the tracks at another place did not give him the right to cross where he was injured, or to use the tracks as a place to urinate, and did not impose upon the servants in charge of switching the duty of keeping a lookout for him except at some point where he might cross. The cars between which he was standing were coupled and there was no reason to expect his presence there, and there is no testimony that any servant of the company knew he was there. The fact that he was an employe did not prevent him from being a trespasser.

But if there was any negligence on the part of defendant, the contributory negligence of plaintiff was so gross as to preclude a recovery. He had no business there, and recklessly and unnecesarily placed himself in a dangerous position in which he was not likely to be seen and in this way was injured. Eastern Ky. Ry. Co. v. Powell, 17 Ky. Law Rep., 1051; Central R. & B. Co. v. Ryles, 13 S. E., 585; McDermot, by., &c., v. Ky. Central Ry. Co., 14 Ky. Law Rep., 437; Lingenfelter v. L. & N. R. R. Co., 9 Ky. Law Rep., 117; Brown's Admr., v. L. & N. R. R. Co., 17 Ky. Law Rep., 145, and cases collected at foot of said case.

ROBERT HARDING AND JOHN W. RAWLINGS, ATTORNEY FOR APPELLEE.

Appellee's office as telegraph operator was in the center of appellant's yards, about 500 feet south of an avenue or street of the town, which ran east and west across these yards. Leading from this office was a cinder path used by all persons having business with the office; 250 feet northwest of this office is the water closet for the use of the employes. On the day plaintiff was injured he left his office to go to this closet across the yards in the usual way; on his way he says he saw an engine and cars moving up and down the track, north and south, between him and the closet, that made it dangerous for him to proceed further. The call of nature was urgent, and he stepped upon the track (which was closed at both ends) between two cars with one half his body exposed to view, to urinate, believing he was in a place of perfect safety and was plainly visible to any one coming from the north. While so engaged the north end of the track was opened and two loaded cars at a high rate of speed thrown against the cars between which he was standing and throwing him with great violence to the ground and injuring permanently his spine.

We claim that appellee was not a trespasser. His position was one of perfect safety and could only be made unsafe by ap-

pellant's negligence. There was nothing to prevent those in charge of and switching these cars from seeing plaintiff where he stood, and his injury is due to appellant's gross and inexcusable negligence.

OPINION OF THE COURT BY JUDGE BURNAM—REVERSING.

This appeal is prosecuted from a judgment of the Boyle circuit court for $2,500 in favor of appellee for personal injuries received in the switch yard of appellant at Latonia in December, 1898, It appears from the testimony that there are 17 or 18 switch tracks in the yards at this point, which connect with the lead tracks, and that they are continuously used by day and night for switching and making up trains, four or five engines being constantly used for this purpose. Appellee was employed by the company as a train dispatcher and telegraph operator. His office or place of business was in what is called the "tower," which is located in the center of the yard, about 500 feet from one of the public streets of the town of Latonia. A cinder pathway was provided by appellant company from the telegraph office to South avenue, which was used by all persons having occasion to visit the office. At South avenue a watchman was stationed for the protection of persons crossing the railroad at that point. About 200 feet northwest of the telegraph office the company had provided a water-closet for the use of its employes, and there was an unobstructed pathway from the telegraph office to this closet by means of the cinder path; the distance, however, being much longer than an air line directly across numerous tracks in the yard. In December, 1898, at about 11:55 a. m., the appellee left the telegraph office to go to his dinner, and, having occasion to stop at the water-closet on his way, went directly across the switch yard to the closet, instead of following the road

which had been provided by the company. After he had crossed two tracks, he discovered that there was an engine handling cars on the third track, and concluded that it would be dangerous for him to attempt to cross that track, and thereupon stepped between two high box cars on the track next to it, and proceeded to urinate, and while so engaged was suddenly knocked down, and received the injuries sued for, by other cars being shoved against those between which he was standing. He testifies that before going between the cars he noticed a white light at the point where that switch connected with the lead track, which indicated that the switch was closed, and that there were quite a number of other cars standing upon the same track with those between which he stepped; that half his body and head were visible while he was urinating; that he kept his face turned in the direction of the switch connection; that he knew that the track was liable to be used at any moment, and that it only required about a second to open the switch. There is no claim that any duty to appellant required that appellee should cross the switch yard, or go to the place where he sustained the injury sued for. This course on his part was for his convenience alone in avoiding the longer walk to the closet which had been provided by the company. The law is well settled, both in this State and elsewhere, that a railroad company is not under obligation, in moving its engines and cars in its own switch yard, to take special precautions or give special warnings to avoid injuring any unauthorized person who may, for his own convenience, go therein, until the presence of such person in a situation of danger has been discovered. 2 Thomp. Neg., (2d Ed.) sec. 1706. In the case of McDermott v. Railway Co., where a boy only 8 years old was

injured in the switch yard of the railroad company, this
court said: "As moving engines and cars to and fro in the
yard of the railroad company is indispensable to the' safe
and proper conduct of its business, it should be no more
obliged to specially look out for the presence of those
who may go there without right than for trespassers on
the main track away from the yard.  To require the bell
to be rung or the whistle blown at every movement of an
engine in the company's yard to and from a coal chute,
water tank, or turntable, or to require an extra employe
to be placed upon every backing engine simply to warn or
look out for the presence of persons having no right or
reasonably expected to be there, when not at all neces-
sary for the safety of persons or property legally entitled
to care and protection by the company, would be unreas-
onable and oppressive.  And the fact that such trespasser
is an infant does not affect the legal rights of the com-
pany." 14 Ky. Law Rep., 437 (20 S. W., 380).    In Rail-
road Co. v. Gastineau's Adm'r, 83 Ky., 122 (7 R. 3) this court
said:    "A railroad company has the right to the exclu-
sive   use   and   occupation   of   its   yard   and   track,
except at   crossings   or   such   places   as   the  public
are  'by    law    authorized    to    use;    otherwise    it
could not properly perform its duties to the public. It is not
required to anticipate an intrusion of others, and one
who enters upon their track without authority does so at
his peril, and in case of injury can not recover, unless it
was wantonly inflicted after the danger was discovered.
Its duty to such a person is merely negative.  It must not,
when it knows of the peril, go on maliciously, or with a
disregard of obvious consequences.  It is not required to
use care to anticipate and discover the peril of such a per-
son, but only to do so after the discovery of the danger.

Until then, no legal duty is imposed, because no one, by a wrongful act, can impose a duty upon another." In Brown's Adm'r v. Railroad Co., 17 Ky. Law Rep., 145 (30 S. W., 639), this court said: "The doctrine as to actionable negligence is that it must be a failure to discharge some duty devolved on the railroad company to the individual entitled to the right, and not a failure of duty to others than himself. A trespasser and wrongdoer can not be heard to argue or say that the train was too heavy, or imperfectly manned, or that the machinery was defective." It therefore becomes important for us to determine the exact status of appellee so far as the railway company was concerned at the time and place of the accident. It is insisted that his employment as train dispatcher and telegraph operator conferred upon him the right to travel through appellant's switch yard when necessary to visit the closet, and that he was exercising this right at the time he stepped between the cars, and that when he did so his position was one of perfect safety, and only became unsafe by the negligence of appellant's employes in runing cars on the track on which he was standing, at a high and dangerous rate of speed by means of "running a switch." In passing upon this question as to whether the employment of a servant by a railway company in one capacity affected his relations to the company when acting in an entirely different capacity, this court said in the case of Railway Co. v. Powell, 17 Ky. Law Rep., 1051 (33 S. W., 629): "The fact that a person holds the office of station agent in a railroad company does not give him authority to run hand cars over the company's road, and he can not invest any one else with it; so that, in the absence of authority to run a hand car from some officer of the company who had the power to grant it, both the appellee in this

action and a station agent of the appellant were trespass-
ers on appellant's track while running thereon." In that
case a station agent and others were run down by a train
while on a hand car placed on the track by the station
agent for the purpose of going to a neighboring town to
get the keys of the station of which he was in charge as
agent, and the appellee in that case had taken passage on
the hand car to assist the agent in its operation at his in-
stance. In this case appellee had no other duties to dis-
charge than to receive and dispatch telegrams at his place
in the telegraph office; no duty to the company called him
to its yard; and the fact that he had the right to cross the
tracks at one place to go to the closet did not give him the
right to cross where he was injured, or to use the track as
a place to urinate, and did not impose upon the servants of
appellant in charge of the switch train the duty to keep
a lookout for him at that point. The cars between which
he was standing were coupled, and there was no reason
to expect his presence at that place, and there is no testi-
mony which tends in the slightest degree to show that any
servant of the company knew he was there. He knew, from
long experience, that the switch opening from this track
to the lead track could be opened, as he testified, in a sec-
ond, and was likely to be so opened at any moment. Both
ordinary prudence and the rules of the company required
that he should look after and be responsible for his own
safety. It seems to us from the undisputed facts of this
case that, as appellee was not in his place of business, or
in the discharge of any duty imposed upon him by his em-
ployment, the appellant company owed him no duty except
to avoid injurying him after it had discovered his perilous
position. Even if it be admitted that there was negligence
on the part of the employes of the company in running

cars upon the switch, the contributory negligence of appellee was so great as to preclude a recovery. The mere fact that it was possible for the trainmen to see a part of his body which was not concealed was not sufficient to charge them with notice of his perilous position, when there was no reason to expect his presence.

We are of the opinion that the motion of appellant for a peremptory instruction should have prevailed. The judgment is therefore reversed, and cause remanded for proceedings consistent with this opinion.

Response to petition by appellee for rehearing:

Counsel for appellee insist in the petition for rehearing that the evidence does not show the company had provided a cinder walk for its employes to use in going to and from the water-closet, and that appellee was authorized to cross the yard as he did. The opinion does not rest finally on the existence of such a walk. The company had provided a water-closet. Cars standing on a side track were not placed there for this purpose, and appellee's use of the cars instead of the water-closet was unwarranted. Appellant's servants in charge of the train were not required to anticipate such use of the cars. It was gross negligence in appellee to stand between the cars for this purpose, and, there being no proof that his danger was perceived by those in charge of the train before the injury or in time to avoid it, a peremptory instruction should have been given to the jury to find for the defendant. A railway yard is necessarily a dangerous place, and one who goes between standing cars in such a yard for purposes of his own takes the chances of injury.

Petition overruled.