CASE 23.—PERSONAL INJURY ACTION BY M. B. WILSON
     AGAINST THE CHESAPEAKE & OHIO RAILWAY
     COMPANY.—October 30.

# Wilson v. Chesapeake & Ohio Ry. Co.

Appeal from Greenup Circuit Court.

S. G. KINNER, Circuit Judge.

Judgment for defendant. Plaintiff appeals.—Affirmed.

Master and Servant—Injury to Servant—Deviation from Regular
    Employment.—Where an employe at a roundhouse left his
    work for a restaurant outside of the railroad yard, not on
    railroad property, and was injured while crossing the tracks
    in the yard by stepping into hot water collected in a pool by
    reason of a breakage from a pipe used to carry steam from
    the engine to passenger coaches in the yard, the railroad was
    not at the time of the accident under any duty to guard the
    employe against any dangers he might encounter, and the
    employe must suffer the consequences of the accident.

W. T. COCHRAN, LE WRIGHT BROWNING and J. G. WADS-
WORTH for appellee.

1. The master's duty to provide for the servant a safe place
to work, extends only to such part of the premises as it is neces-
sary for the servant to use in the performance of his labors.

2. The mere proof of the custom of the appellant and others·to
go to ·this particular restaurant, is not sufficient to create any
additional duty upon the part of the master, in the absence of
proof that such custom was known, and actually or impliedly con-
sented to by the master.

ALLEN D. COLE, W. T. COLE and W. J. A. RARDIN for
appellant.

1. The appellant was not a trespasser and appellee owed him

the duty while in its employment and in the exercise of ordinary care for his safety, to furnish him a safe place in which to work, and to go to and from his work.

2. The testimony offered by appellant that other employes in the yards of appellee were accustomed to cross the yards on the same mission of appellant at the time he sustained the injury, was admissible to show notice of appellee of the probability that such act would be done.

OPINION OF THE COURT BY JUDGE BARKER—Affirming.

The appellant, M. B. Wilson, instituted this action to recover from the appellee, the Chesapeake & Ohio Railway Company, damages for injuries accruing to him by his inadvertently stepping into a hole filled with hot water, by which he severely scalded his leg. His cause of action is based upon the alleged negligence of the corporation in leaving the pool exposed without guards to prevent the unwary from falling into it. Issue was made upon the alleged negligence of the defendant, and the contributory negligence of the plaintiff was pleaded in bar of his right to recover. The issues were completed by reply controverting the allegation of contributory negligence, and, the case coming on for trial before a jury, after the plaintiff's evidence was all in, the trial court sustained the motion of defendant for a peremptory instruction to the jury to find a verdict in its favor. To review this ruling, the plaintiff has appealed.

The appellant, M. B. Wilson, was employed by the Chesapeake & Ohio Railway Company as a watchman and engine tender at its roundhouse in Russell, Greenup county, Ky. The duties of his employment required his presence at the roundhouse from 6 o'clock in the evening until the same hour in the morning. At about 3 o'clock on the morning of December 31,

1906, Wilson left his place of work, and started to a restaurant outside of appellee's yard, for the purpose of getting something to eat. The restaurant to which he was going was not on appellee's property, nor owned or controlled by it. When at some distance from the roundhouse and while crossing the railroad tracks in the yard, the appellant stepped into the hot water, with the result that his left leg was scalded and burned. The testimony shows that at the point where appellant was injured the water had accumulated into a pool, having collected there by reason of leakage from a pipe which was used to carry steam from the engine room to the place in question, from whence it was conveyed by rubber hose to passenger coaches standing in the yard in order to warm them. Upon the night in question a Pullman car was standing upon the track, and from four to six feet away an engine was standing. Appellant attempted to go through the passageway between them, and while so doing stepped into the pool, and was injured as above set forth. The evidence for the appellant showed that the employes of the corporation were permitted, and did frequently go to the restaurant in question and get meals during the night. It will be observed that, while the relation of master and servant still existed between the corporation and the plaintiff, yet he was not in the active discharge of any duty he owed to the corporation when he left the roundhouse and went to the restaurant. He was going because he was hungry, and desired a meal. The master was therefore at the time under no duty to watch over and guard him against any danger he might encounter on his way to and from the restaurant.

In principle this case is very similar to that of Smith v. Trimble, 111 Ky. 861, 23 Ky. Law Rep.

206, 64 S. W. 915, where it is said: "Appellant, a workman of a contractor preparing certain rooms of appellee's house, was injured by stepping onto a balcony leading from an upper porch to an adjacent room, when the balcony fell, precipitating him to the ground, and injuring him. It was not necessary to use this balcony in going to and from the rooms upon which he was at work, but he did use it, without the knowledge or consent of appellee, for his (appellant's greater convenience in calling to a workman below. The falling of the balcony was primarily caused by its unsafe and weakened condition, unknown to appellee. * * * The question presented here is: What was appellee's duty to appellant under the circumstances? We are of the opinion, and so hold, that appellant while engaged in that work in using such parts of appellee's premises as were reasonably necessary to enable him to do his work was on the premises under the assurance in law by appellee that such part so necessarily used were reasonably safe for the purposes of such use. But beyond that appellee owed appellant no duty greater than to a stranger or trespasser. And when appellant, without invitation or knowledge of the owner, went into or upon other parts of the premises not necessary for the performance of his labor, he assumed all the risks of doing so. He was neither required, expected, nor allured to be at the place where he was injured, and consequently appellee was under no duty to him to provide there a place of safety." In Louisville & Nashville R. R. Co. v. Hocker, 111 Ky. 707, 23 Ky. Law Rep. 982, 64 S. W. 638, 65 S. W. 119, it appears that the plaintiff, a telegraph operator in the employment of the railroad company, left his office and went out into the company's yard upon a call of nature,

and while there was injured by the alleged negligence of the corporation in backing a train of freight cars upon him without giving any warning of its approach. In reversing the case, and directing that a peremptory instruction be given, the following language was used by the court: "In this case appellee had no other duties to discharge than to receive and dispatch telegrams at his place in the telegraph office. No duty to the company called him to its yard; and the fact that he had the right to cross the tracks at one place to go to the closet did not give him the right to cross where he was injured, or to use the track as a place to urinate, and did not impose upon the servants of appellant in charge of the switch train the duty to keep a lookout for him at that point. * * * It seems to us from the undisputed facts of this case that as appellee was not in his place of business, or in the discharge of any duty imposed upon him by his employment, the appellant company owed him no duty except to avoid injuring him after it had discovered his perilous position." In the case of Mitchell-Trauter Co. v. Ehmett, 65 S. W. 835, 23 Ky. Law Rep. 1788, 55 L. R. A. 710, the following facts appear: The plaintiff went upon the roof of the building in which the defendant operated its rolling mills for the purpose of making certain repairs there. He went at the request of a fellow servant during the noon hour. When he went upon the roof, he fell through a hole therein which had negligently been left open by other servants of the corporation. This court held that, although the general relation of master and servant was in existence at the time of the injury, yet, inasmuch as the plaintiff was not at a place where his duty called him, the corporation owed him no duty, and he could not recover for the

injury sustained. In the case of Shadoan's Adm'r
v. C., N. O. & T. P. R. R. Co., 82 S. W. 567, 26 Ky.
Law Rep. 828, the facts were as follows: Two of the
appellee's trains were standing facing each other
and from 30 to 50 yards apart. Appellant's intestate,
a brakeman upon one of the trains, had gone for-
ward to throw a switch, and after doing so had
climbed into the engine cab of the train to which he
did not belong to get a drink of water, and while
there was injured by the collision of the two trains.
They, owing to some defect in the setting of the
brakes, and being upon a rather steep grade, ran
together. In that case we said: "Assuming that the
collision of the trains was the result of the negligence
of appellee's servants, we think the trial court ruled
correctly in granting the peremptory instruction com-
plained of. Appellant's decedent was on train No.
35 for his own convenience, and not in the discharge
of any duty to appellee. In the case of the L. & N.
R. R. Co. v. Hocker, 111 Ky. 707, 23 Ky. Law Rep.
982, 64 S. W. 638, 65 S. W. 119, one of the employes
of the railroad company, for his own convenience,
had gone between cars in its yard, where he was
injured (it is alleged) by the gross negligence of its
employes in backing a train against the cars between
which he was standing. In the opinion it is said:
'It seems to us from the undisputed facts of this case
that as appellee was not in his place of business, or
in the discharge of any duty imposed upon him by his
employment, the appellant company owed him no
duty except to avoid injuring him after it had dis-
covered his perilous position.'" In the case of L.
& N. R. R. Co. v. Pendleton's Adm'r, 104 S. W. 382,
31 Ky. Law Rep. 1025, 126 Ky. ——, the following
state of facts existed: The intestate was a young

man in the employment of the railroad corporation in the car repair department. Being anxious to qualify himself for the position of brakeman, he voluntarily undertook to assist the yard crew in doing switching, and while so engaged was killed when riding upon a moving car which came in contact with another car which had been negligently left on an adjacent track. In the opinion rendered in that case, it was expressly assumed that the decedent, at the time he was killed, was assisting the switching crew by permission, and that he had often done so before with the consent of the foreman of the switching crew. It was also expressly assumed that, if the decedent had been in the discharge of a duty owed by him to the company, the negligence of the company was such that his administrator would have had a cause of action for the death of the decedent. In reversing the judgment, and denying the right of the plaintiff to recover for the injury, Judge Carroll, in writing for the court, among other things, said: "The trespasser or the volunteer who is injured in or about the performance of labor that he undertakes cannot look to the owner of the premises to compensate him for the injury or damage, unless it is inflicted after his peril is discovered. And when a person employed to perform certain services goes entirely without the line of his duty, and assumes the performance of other labors for his master, without his direction or authority, he occupies no better position than if the relation of master and servant did not exist in respect to any employment between them, as, when the master engages a servant to perform specified service, he is only responsible to him for some breach of duty committed within the scope or limits of the employment for which the servant has been engaged.

Thus in Thompson on the Law of Negligence, section 4677, it is said: 'An employe who undertakes without the order or request of his employer, or the representative of the employer or contrary to his orders, or in compliance with the orders or requests of another employe who has no authority from the employer to give such orders or to make such a request, to perform work outside the scope of his employment or upon dangerous premises, where the terms of his employment do not require him to do or be, * * * is deemed to assume the risk attendant upon his voluntary undertaking, and cannot recover for injuries occasioned by any defect in the premises, machinery, or tools to which he thus voluntarily exposes himself. The reason of the rule is obvious. The master undertakes to exercise reasonable care to the end of keeping his premises, his machinery, his tools, and his appliances in a reasonable condition of safety for the protection of the servant employed in a stated service, and so long as he continues in that service. But, when he places himself outside the line of his duty, the relation of master and servant is deemed to be temporarily suspended. His position is then in all things that of a trespasser or bare licensee. The master owes him no duty to anticipate his deviation from his duty and the possible danger which may arise to him therefrom, and to provide against it. He takes things as he finds them, and suffers all consequences of his own error, and cannot make his master liable therefor. The law will not on obvious grounds of justice compel the master to pay damages which the servant has brought on himself by undertaking to do something which the master did not employ him to do, but will ascribe his calamity to his own unnecessary and gratutious act.' The

same doctrine is announced in Labatt on Master and Servant, section 633, and approved in Louisville & Nashville R. R. Co. v. Hocker, supra.

The principle involved in the case at bar cannot be distinguished from that settled in the cases above cited. The plaintiff, when he left his place of duty and undertook to walk across the yard of the railroad company for his own purposes, assumed all of the hazard of the undertaking, and cannot complain that the yard was not kept free from danger for his benefit. As said in the Pendleton Case, supra, the master owed him no duty to anticipate his deviation from his duty and the possible danger which might arise to him therefrom, and to provide against it. He took things as he found them, and suffers all consequences of his own error, and cannot make his master liable therefor.

Judgment affirmed.

Nunn, J., dissenting.