## KIRBY LUMBER CO. v. SCURLOCK et al. (No. 623.)

(Court of Civil Appeals of Texas. Beaumont. March 12, 1921. Rehearing Denied April 6, 1921.)

1. **Master and servant ⬅375(2)—Sawmill employé run over on employer's track while riding home on own velocipede held not in course of employment within Compensation Act.**

Where a lumber company owned all the property around its sawmill and an employé riding homeward from his work on his velocipede on the company's tramroad was killed by a train at a point 1½ miles from the mill, *held*, that the remedy of his widow was not limited to proceeding under the Workmen's Compensation Act (Vernon's Sayles' Ann. Civ. St. 1914, arts. 5246h–5246zzzz).

2. **Railroads ⬅400(12) — Sawmill employé riding home on velocipede ahead of employer's train held not negligent as matter of law.**

In action for death of lumber company's employé struck by train while riding homeward from the company's sawmill on his velocipede on company's tramroad, *held*, that, in starting from the mill ahead of the train which killed him knowing it was about to follow him or in failing to keep a lookout therefor, deceased was not negligent as a matter of law; deceased having told the train engineer he was going out ahead and having requested and been promised that a lookout be kept for him, and the accident having been preventable if such lookout had been kept.

3. **Railroads ⬅400(6) — Negligence towards sawmill employé riding home on own velocipede ahead of employer's train held for jury.**

In action for death of lumber company's employé struck by train while riding homeward from the company's sawmill on velocipede on company's tramroad, where it appeared that the engineer of the train had been advised by deceased that he was starting ahead of the train and the engineer had promised to keep a lookout for him, *held*, that the company owed deceased the duty of exercising ordinary care for his protection, and whether this duty was performed by the occasional lookout kept by its servants was for the jury, and the company was not entitled to an instructed verdict on the theory deceased was a licensee.

4. **Railroads ⬅358(1)—Licensee on track assumes risk.**

A licensee on a lumber company's tramroad assumes all risks growing out of the operation of a train thereon with the tender in front of the engine.

Appeal from District Court, Newton County; J. T. Adams, Judge.

Action by Mrs. Maggie Scurlock and others against the Kirby Lumber Company. From judgment for plaintiffs, defendant appeals. Affirmed.

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Andrews, Streetman, Logue & Mobley, of Houston, for appellant.

Collins & Morris, of Beaumont, for appellees.

WALKER, J. On the 5th day of March, 1919, one of the log trains of the Kirby Lumber Company ran over and killed J. W. Scurlock. This suit was by his wife and children to recover damages for his death, and resulted in a judgment for $15,000 in their favor. The case was submitted to the jury on special issues as follows:

"Question No. 1: Did the agents and servants of the defendant, Kirby Lumber Company, in charge of the tram train in question, in running the tender in front of the engine of defendant's tram train out on defendant's tram track, on the occasion in question, fail to exercise such care for the safety of J. W. Scurlock as a person of ordinary care would have exercised under the same or similar circumstances?"

To this question the jury answered: "Yes."

"Question No. 2: Did the agents and servants of the. defendant, Kirby Lumber Company, in charge of its tram train, on the occasion in question, fail to keep such a lookout for J. W. Scurlock on said tram track as a person of ordinary care would have kept under the same or similar circumstances?"

To this question the jury answered: "Yes."

"Question No. 3: Did the agents and servants of the defendant, Kirby Lumber Company, in charge of said tram train on the occasion in question, fail to use such care to give J. W. Scurlock warning of the approach of the tram train upon him as a person of ordinary care would have used under the same or similar circumstances?"

To this question the jury answered: "Yes."

"Question No. 4: Could the defendant's agents and servants in charge of said tram train, on the occasion in question, by the use of ordinary care have discovered said J. W. Scurlock on the tram track ahead of said tram train in time to have avoided running over him by the use of ordinary care?"

To this question the jury answered: "Yes."

"Question No. 5: If you have answered either or all of the four foregoing questions, 'Yes,' then you will answer the following question: Was the failure on the part of the agents and servants of the defendant, Kirby Lumber Company, in charge of said tram train, to use such care as a person of ordinary care would have used in either or all of the particulars inquired about in the four foregoing questions, the proximate cause of the death of J. W. Scurlock?"

To this question the jury answered: "Yes."

"Question No. 6: If you have answered question No. 4, 'Yes,' then you will answer the following question: How far from said tram train, in the direction in which it was going on the occasion in question, could the defendant's agents and servants in charge of said tram train, by the use of ordinary care, have discovered said J. W. Scurlock, on said tram track before running over him?"

To this question the jury answered: "450 yards."

"Question No. 7: Did J. W. Scurlock, upon the occasion in question, just prior to his going out on the tramroad on his velocipede, tell Mark Herrin, the engineer of the tram train, that he was going out ahead of the train, and to be on the lookout for him, or words to that effect?"

To this question the jury answered: "Yes."

"Question No. 8: Did J. W. Scurlock, in going out on his velocipede over the tram track in question, ahead of the tram train, instead of waiting and following the tram train out, exercise such care for his own safety as a person of ordinary care would have exercised under the same or similar circumstances?"

To this question the jury answered: "Yes."

"Question No. 9: Did J. W. Scurlock exercise ordinary care for his own safety to keep himself informed of the movement of the tram train in question and to avoid being run over thereby?"

To this question the jury answered: "Yes."

"Question No. 10: Did J. W. Scurlock, upon the occasion in question, keep such a lookout for the approach of the tram train as a person of ordinary care would have kept under the same or similar circumstances?"

To this question the jury answered: "No."

"Question No. 11: If you have answered either one or all of questions 8, 9, and 10, 'No,' then you will answer the following question: Was the failure on the part of J. W. Scurlock to use ordinary care for his own safety in either or all of the particulars inquired about in questions 8, 9, and 10. the proximate cause of the death of J. W. Scurlock?"

To this question the jury answered: "No."

Appellant asked for an instructed verdict on three grounds: (1) Plaintiff's remedy was under the Workmen's Compensation Act; (2) Scurlock was guilty of contributory negligence proximately causing his death; and (3) if Scurlock was a licensee, defendant was guilty of no negligence toward him. We will discuss these in the order named.

[1] 1. Scurlock was employed by the defendant at the time of his death as a sizer at its sawmill at Call, Tex., and had been so employed for five or six years. This Call mill was a large plant, and defendant owned all the property around the mill. It was logged over a tramroad, extending from the mill quite a long distance to the timber. Scurlock lived about three miles from the mill near this tramroad, which he used most all the time in riding his velocipede to and from his work. Occasionally he rode to his work in a Ford car, but when he did not use his car he always rode his velocipede, using the tramroad. McMahon, a witness for plaintiffs, and a nephew of deceased, testified as follows, as to Scurlock's use of the velocipede and tramroad:

"Mr. Scurlock used this tram track there in order to come from his home to his work, and he would go back from his work to his home in it every day. That was the easiest way and quickest way of getting in to the mill every morning from his home on this velocipede over the tram track. It was a surer way of getting to the mill. It didn't make any differ-

ence about what kind of weather it was; with a velocipede, a man could certainly get to his work on time. It facilitated his work for him to be permitted to come in to his work on the velocipede, and it facilitated his returning from his work home. That was true when my father and I were using the tram track with the velocipede. We could get to our work more easily and more quickly and more expeditiously by using the velocipede on the tram track than otherwise."

No one used this track, as did Scurlock, except employés of the company. On the day of the accident, Scurlock rode from his home to the mill on his velocipede; but, as the mill was idle that day, he did no work for the company. He worked a little on his sizer, and spent the balance of the morning in the shop, working on his velocipede. About noon he left the mill for home, riding his velocipede on the tramroad. The log train left the mill 20 or 30 minutes later, and ran over and killed Scurlock about a mile and a half from the mill. The defendant was a subscriber under the Workmen's Compensation Act (Vernon's Sayles' Ann. Civ. St. 1914, arts. 5246h–5246zzzz), with Lumbermen's Reciprocal Association. Shortly after the death of her husband, Mrs. Scurlock filed a claim under the Workmen's Compensation Law with the Industrial Accident Board. The insurer did not contest the claim, but Mrs. Scurlock dismissed it before an order was entered by the Board in her favor. After the claim was dismissed, the insurer tendered checks to Mrs. Scurlock in the proper amounts under the Workmen's Compensation Law. We think this case is controlled by American Indemnity Co. v. Dinkins, 211 S. W. 951, an opinion by this court, in which writ of error was denied by the Supreme Court. While the facts are somewhat different in this case, yet we think the underlying principles are the same. Appellant would distinguish this case from the Dinkins Case on the fact that Scurlock was killed on property owned by his employer, by an instrumentality of the employer, which it used in the conduct of its business, and further by the fact that it was advantageous to Scurlock to use this track in going to his work and also of advantage to the employer in having a sure, safe road for Scurlock to reach his work. We do not think these facts distinguish this case in principle.

Erickson v. St. Paul City Railway Co., 141 Minn. 166, 169 N. W. 532, is a case where an employé riding home in his employer's truck, used not as a part of the contract of employment, but only occasionally, was struck by a street car and injured. Judge Taylor, speaking for the Supreme Court of Minnesota, said:

"It is clear from these provisions that workmen who have completed their day's work and have left the premises where they were employed and are not engaged in performing any service of their employment are not covered by the Compensation Law until they again enter upon the performance of the service for which they are employed. In the case at bar it will be noted that the accident happened after the employés had completed their day's work and had left their place of employment and while they were proceeding toward their respective homes. Although they were riding on the truck of their employer, it clearly appears that their contract of employment imposed no obligations upon the employer to transport them to or from the place of work, and that they were merely riding as licensees to serve their own convenience. Their service for the day had terminated; they had left the place where such service had been performed and were no longer engaged in performing any service for their employer. Under such circumstances they were not within the provisions of the Compensation Law and the trial court ruled correctly."

McInerney v. B. S. R. Co., 121 N. E. 806, is a case by the Court of Appeals of New York, and we think the discussion is very much in point on the propositions advanced by appellant. The court said:

"But no case had been cited or found where an employé going for such a purpose [for rest and refreshment] to his home or other place selected by him a substantial distance away from the 'ambit' of his employment and from the employer's premises has been regarded as so engaged in the latter's business that an accident then happening to him would be held to be one arising out of and in the course of his employment. On the contrary, it has been uniformly held that it did not arise. Boyd on Workmen's Compens. § 481; Ruegg on Employer's Liability & Workmen's Compens. 377; Brice v. Lloyd, 2 B. W. C. C. 26; Hoskins v. Lancaster, 3 W. C. C. 476, 478, 479; Hills v. Blair, 182 Mich. 20, 148 N. W. 243. Such an act of the employé lies outside of his employment within the fair application of the principles which were laid down in matter of De Voe v. N. Y. S. Rys., 218 N. Y. 318, 113 N. E. 256, L. R. A. 1917A, 250, and does not come within the rule applied in Matter of Littler v. Fuller Co., 223 N. Y. 369, 119 N. E. 554, where the transportation in the course of which the injury arose was by the contract of hiring expressly 'brought within the scope of the employment.' This view is also in accordance with the decisions in negligence cases. Wilson v. C. & D. Ry. Co., 130 Ky. 182, 113 S. W. 101; Moronen v. McDonnell, 177 Mich. 691, 143 N. W. 8."

In our judgment, as we have said, the Dinkins Case is decisive of this case on this proposition.

[2] 2. Nor was Scurlock guilty of contributory negligence as a matter of law. On this issue we give the following additional facts. When Scurlock left the mill plant, he told the engineer on the log train that he was going out ahead of his train, and asked him to keep a lookout for him. At that time the train was almost ready to go. Nothing to do except couple up the cars. It went out, tender in front of the engine, as had been its long-established custom. The weather was

cold, and, for protection, the engineer and fireman drew their shades and looked down the track every moment or so. Had they been keeping such a lookout as their duty to Scurlock required, they could have seen him 450 yards from the place of accident. The train was running only eight or ten miles per hour at the time, and could have been stopped in half that distance. But, being shut up in their cab they did not see him until after he was run over. Of course, Scurlock knew the train was behind him, but his velocipede required his attention, and at the place he was killed he must have known that the engineer and fireman could see him along way ahead of them, and as they promised to keep a lookout for him, and failed to do so, this case comes clearly within the rule announced in Trochta v. Railway Co., (Com. App.) 218 S. W. 1038; Kirksey v. Southern Traction Co. (Sup.) 217 S. W. 139; Railway Co. v. Price, 222 S. W. 628; Hines v. Arrant, 225 S. W. 768.

Now was Scurlock guilty of contributory negligence as a matter of law in going ahead of the log train? He advised the engineer of that fact, and in the exercise of ordinary care could have believed that the engineer would perform his duty, and give him fair warning.

[3] 3. Appellant's third ground for an instructed verdict was not well taken. Knowing that Scurlock was on the track, appellant owed him the duty of exercising ordinary care for his protection. Whether this duty was performed by its servants in pulling down the shades of the cab, as they did, and only occasionally looking down the track for Scurlock, was—to put it in the strongest light for appellant—a question for the jury. So, on the whole case, appellant was not entitled to an instructed verdict on the theory that Scurlock was a licensee.

[4] From the quoted charge above, it appears that four questions of negligence were submitted to the jury. These four issues were answered in appellees' favor. The second, third, and fourth grounds of negligence were clearly raised by the testimony, and the answers to these questions convict the defendant of negligence and are fully sustained. But, if we are sustained in our conclusion that Scurlock was a licensee, and not an employé, appellant owed him no duty in regard to the issue submitted by question No. 1. He assumed, as a matter of law, all risks growing out of the operation of the train with the tender in front of the engine. But no exception is urged against this question, the exception being against all four issues jointly.

In attacking the answer to this question, as we construe appellant's assignments, no such proposition is raised. If, as contended by appellants, Scurlock was killed in the course of his employment, this issue does raise a question of negligence. Two theories as to the status of Scurlock are raised by this record, and it was the duty of appellant to state the status of Scurlock on which the assignments of error are based.

If we are in error in our construction of these assignments, the submission of question No. 1 is immaterial. As we have said, three other issues of negligence, sufficient to sustain the judgment of the court, were found in appellee's favor. The issue of proximate cause was submitted to the jury under question 5, and in answering this question the jury found that the negligence "in either or all of the particulars inquired about" was the proximate cause of the death of J. W. Scurlock. It does not appear from this answer that proximate cause was predicated in question No. 1. Appellant advances no assignment that from the answer to question 5 it is uncertain as to what issue or issues were found to constitute proximate cause. Then, again, no exception was taken to question No. 5, on the ground that it submitted to the jury an issue not involving negligence, referring specially to question No. 1. In the absence of such an exception to the question itself, we doubt that an assignment would lie against the answer.

There was no conflict between the answers to questions Nos. 9 and 10. No. 9 refers to the movements of the train in relation to its schedule time; that is, the time it would leave the mill. No. 10 refers to the care exercised by Scurlock after he left the mill.

In answer to question No. 10, the jury did not convict Scurlock of contributory negligence. This still remained an issue of fact for the jury.

In Railway Co. v. Harrington, 209 S. W. 685, Railway Co. v. Peveto, 224 S. W. 552, Railway Co. v. Pearson, 224 S. W. 708, and Railway Co. v. Skinner, 224 S. W. 713, this court had before it a very similar question to the one presented by appellant here. In those cases we held that negligence in attempting to cross in front of a fast moving train, under the facts in each of those cases, was, as a matter of law, a proximate cause of the accident. The Supreme Court has granted writs of error in all these cases, with the notation that proximate cause should have gone to the jury as a question of fact. We believe the cases referred to are much stronger on this question than this case. Apart from the holding by the Supreme Court in those cases, we would be of the opinion that proximate cause in this case should go to the jury; but the granting of the writs of error in those cases removes from our mind any doubt about the correctness of our ruling here.

No error was committed in the admission of the order dismissing plaintiff's claim before the Industrial Accident Board. The recitals contained therein could not have affected appellant's case injuriously. As we construe them, they refer to the issue that

the court took from the jury by peremptory instruction. Also, we do not see how appellant was injured by the admission, as testimony, of the portions of plaintiff's petition, offered by them.

Appellant excepted to the court's charge placing the burden upon it to prove by a preponderance of the evidence that J. W. Scurlock was guilty of contributory negligence. We believe this was a proper charge, under the facts of this case, and that Railway Co. v. Shieder, 88 Tex. 152, 30 S. W. 902, 28 L. R. A. 538, is not in point.

Finding no error in this record, the cause is in all things affirmed.