## Interstate Coal Company v. Deaton, by et al.

(Decided April 2, 1912.)

### Appeal from Knox Circuit Court.

1. Master and Servant—Infant—Personal Injury—Action for Damages—Peremptory Instruction.—An infant seventeen years of age, driving a wagon loaded with baled hay through a barn door, cannot recover for an injury caused by his being struck by a cross-beam ten feet from the ground, against which the door closes, where he knows that the cross-beam is there, and lowers his head and body to avoid striking it, but does not lower them sufficiently, although he had plenty of room in which to do so.

2. Same.—Failure to warn an infant of a danger which he knows, and is capable of appreciating, is not negligence on the part of the master.

P. D. BLACK, JAMES D. BLACK, BENJAMIN B. GOLDEN and HIRAM H. OWENS for appellant.

POWERS, SAMPSON & SMITH and J. M. ROBISON for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

Ben Deaton, a young man seventeen years of age, while driving a wogan loaded with baled hay through the door of a barn belonging to appellant, Interstate Coal Company, was struck and severely injured. Suing by his next friend, Dan Deaton, he brought this action to recover damages. A trial before a jury resulted in a verdict and judgment in his favor for $995. The coal company appeals.

Appellee bases his right to recover on appellant's failure to furnish him a reasonably safe place in which to work; also on the fact that he was an infant, and appellant failed to warn him of the danger and upon the further ground that he was ordered by one superior in authority to drive the wagon into the barn, and the danger was not so apparent that an ordinarily prudent person of his age and experience would not have attempted to do so.

The injury occurred under the following circumstances: Appellant owns and operates a coal mine at Cumberland, Knox county, Kentucky. In connection therewith it has two barns, wherein it keeps mules and horses, and stores hay, corn and other feed stuff. The barn at which appellee was injured was a frame structure several feet long, with a hall-way eight or ten feet wide running through the center, and stalls on each side, with doors opening from the hall-way into each stall. On each side and above the stalls were lofts wherein to store hay. Still higher up, and over the hall-way, was another loft. The door to the barn was about eight or ten feet wide, and about eleven or twelve feet high. The frame of the building extended around the door and the planks were nailed thereto. Above the door was a cross timber, to which the planks from above were nailed, and against which the door closed. This cross timber was about on a level with the floor of the loft above the hall-way, and was about ten feet from the ground. At the bottom of the door was a sill, which was a part of the door frame and the building, and against which the door rested when closed. A portion of this sill was placed in the ground, and a portion of it projected above. The sill was placed in that position when the door was erected. There was a depression just outside, and im-

mediately in front of the door, and in order to get into
the barn with wagons, a fill of dirt and cinders had been
made, which gradually slanted up to the sill. According
to some of the witnesses, this fill was about even with the
sill, while others testify that the sill projected from one
to four inches above the fill. When injured, appellee
was driving a wagon on which were loaded twelve bales
of hay. These bales were each about 3 1-2 feet long,
two feet wide, and a foot and a half thick, and weighed
from 85 to 120 pounds. The wagon bed on which the
bales were piled was three feet wide and ten feet long.
The bottom layer consisted of six bales, laid lengthwise
on the wagon bed. The second layer contained five
bales, the third layer four bales, the fourth layer three
bales and the fifth, or top layer, two bales. The last
four tiers were placed crosswise. As the number of
bales decreased towards the top, each layer of bales was
placed so that it was about one foot shorter than the
tier of bales upon which it rested. In other words, the
bales were arranged like stair steps. Appellee was
seated upon the layer that contained three bales; that
is, the fourth layer. His feet rested upon the projecting
bale thereunder, and directly behind him was the fifth
layer, containing two bales.

Appellee went to work for appellant about eleven
days prior to the injury. He was employed by appel-
lant's foreman, John Bassett. He worked under Bas-
sett until the afternoon of February 26, 1909. At that
time Bassett told appellee that he, Bassett, was going
away, and for appellee to report to the stable boss, Bob
Kenoa, on the next morning, and Kenoa would tell him
what to do. On the next morning, after he reported to
Kenoa, he was directed by the latter to harness his
mules and haul some brick for the company, and hauled
three wagon-loads of brick before noon. In the after-
noon, he was directed by Kenoa to get his wagon and
haul some hay from the depot to some barns about 150
yards distant. Kenoa was present and directed how the
hay should be loaded into the wagon at the depot. Two
wagon-loads were hauled to one of appellant's barns
near the station. The third load was hauled to the barn
at which the injury occurred. Kenoa reached the barn
before appellee arrived with his wagon. When appellee
got within about ten or twelve feet of the barn, he said
to Kenoa: "Are you going to drive up here by the

side and unload this hay off?'' Kenoa said "No," and then walked in the hallway, where there was a wheel-barrow. Kenoa put the wheel-barrow in one of the stalls, and told appellee to drive in. Appellee said to Kenoa: "That is too narrow; I can't get in there with this load up high.'' Kenoa said: "Yes, you can; drive on in.'' At that time Kenoa was standing about the middle of the barn, and could see appellee, who was seated on the fourth tier of bales. When Kenoa told appellee to drive in, appellee caught up his lines and spoke to his mules. As he started through the door, he saw the cross-piece, and bowed his head low enough to miss it. After getting his head under the cross-piece, he felt the wheels rise up as they struck the sill, which was three or four inches above the ground outside. He was caught between the hay and the cross-beam, and his back wrenched so as to make it crooked, with an open space between the fifth and sixth vertabrae. He was rendered unconscious by the injury. Appellee claims that he did not know of the existence of the lower sill, and did not know of or appreciate the danger of driv-ing in under the circumstances. He had never had any experience before in driving in or out of the barn with a wagon, and was not warned by Kenoa, or anyone else, of the danger. He admits that there was nothing to prevent him from seeing the cross-beam at the top of the door. When he expressed a doubt about being able to go into the barn, he was thinking only of the width of the door. He never thought of the height, but was looking to the wagon space. Appellee could have sat on a lower bale, but he did not think of that. Appellee further admits that he had gone in and out of the door on an average of about eight times a day for eleven days previous to the accident. Appellee did not know where Kenoa was at the time of the trial. He had tried to find him.

Woodson Smith testified that he had worked at the barn a day or two before the accident; that Kenoa was in charge of the barn, and also had charge of loading and unloading the hay, grain and stuff at the barn, and that Kenoa gave orders in regard to the manner of doing the work. He also stated that the lower sill and upper cross-beam could be easily seen by anyone. The other evidence for appellee relates to the extent of his

injuries, which it is unnecessary to consider, as it is not contended that the verdict is excessive.

The evidence for the appellant is to the effect that Kenoa was simply a stable man, and had no authority or control over appellee. Appellee was warned not to drive into the barn just before he was injured. It was a greater distance from the top to the lower sill to the cross-beam above, than it was from the top of the dirt which covered the sill to the cross-beam. The only witness who testifies as to the construction of the barn says that it was constructed in the usual and proper way. The sill, in his opinion, was necessary in order to tie the timbers to. Witness built his barn that way, and all the barns throughout the country are built that way.

It is insisted by appellant that the court erred in failing to award it a peremptory instruction. This is the only question we deem it necessary to consider. Appellee did not attempt to show, nor was he injured by, any defect in the construction of the barn. The barn was built in the ordinary and usual way. The door was about eight feet wide and ten or twelve feet high. It was large enough to admit the wagon, loaded as it was. There was nothing hidden or concealed about the door. Therefore, the place was perfectly safe for anyone using ordinary care for his own safety. But appellee claims that he was inexperienced in driving wagons through a barn door, and did not know and appreciate the danger. The evidence shows that he was seventeen years old, and had worked on a farm. He was a boy of at least average intelligence. He admits that he had gone in and out of the door in question on an average of eight times a day for eleven days. Therefore, he knew the construction and appearance of the door. Not only this, but he admits that before driving in, he stopped his wagon within about ten feet of the door. While he claims that he did not know of the danger, there are some things that one must know. He must know those things which are right before his eyes, and which he himself admits having seen. The cross-beam was right in front of him. He intended to drive under. He admits that he saw it, and bowed his head to escape being struck. He says that he was caught on the shoulder after he got his head under, and this was due to the fact that the front wheels rose upon the sill. From his own statement, he was seated about the middle of the

wagon. Therefore, the front wheels struck the sill before he bowed his head. Although inexperienced in driving a wagon, he had sufficient judgment and discretion to know that if, in approaching an object right before his eyes, if he did not keep out of its way, he would be struck. His earliest instinct taught him this, and it must have been confirmed many a time before he reached the age of seventeen years. It is never necessary to warn a servant of a danger which he knows and appreciates. But it is insisted that the stable-boss's direction to drive in was an assurance of safety, and that appellee had the right to rely on this assurance unless the danger was so obvious that an ordinarily prudent person of his age and experience would not have undertaken to enter the door. Appellee's sole concern was with reference to the wagon as it was loaded. He feared that the door was not large enough to admit the wagon. The stable-boss's direction to drive in was an assurance that the wagon could enter. This assurance did not in any way change the position of the cross-beam, which was right before appellee's eyes. Why, then, was appellee injured? Not because the place was not reasonably safe; it was safe. Not because he was inexperienced, and the stable-boss failed to warn him of the danger; he knew of the danger. Not because the stable-boss told him he could drive in; he could drive in. He was injured solely because he failed to lower his head sufficiently to escape striking the cross-beam, although he had plenty of room for that purpose. The accident, therefore, was due to his own lack of ordinary care, and for this appellant is not responsible. It is the rule that if an employe, notwithstanding his minority, has sufficient intelligence and experience to appreciate the danger of a situation, the rule applicable to adults may be applied in his case. Blackwith Organ Co. v. Malone, 32 R., 596; Knight, etc., v. Paducah Box & Basket Co., 31 R., 629.

As appellee knew the cross-beam was there, and was injured solely because he failed to lower his head and body enough to avoid striking it, though he had plenty of room in which to do so, it follows that appellant's motion for a peremptory instruction should have been sustained.

Judgment reversed, and cause remanded for proceedings consistent with this opinion.