## The Kentucky Refining Company v. Schutz.

(Decided May 23, 1912.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, Second Division).

1. Master and Servant—Failure to Warn Servant—Risks Assumed by Servant.—Where a servant was, by his superior, assigned to a duty not in the scope of his employment, viz: to go into a dark, dry kiln and aid other workmen in the removal therefrom of a heavily loaded truck, irregularly ricked with staves, and the servant, while so engaged, being about to be forced by the truck against the door jamb, attempted to retreat and was injured by the projecting staves in his rear, the master was negligent in failing to warn the servant of the dangers incident to the operation of the truck. The peril being such that the servant could not reasonably anticipate, he did not assume the risk of injury thereby.

2. Master and Servant—Contributory Negligence—Acts in Emergencies.—The servant, suddenly confronted with the peril of being

squeezed between the truck and door facing, is not required to choose the best means of safety to himself, and was not guilty of contributory negligence in attempting to retreat from a position of apparent danger.

O'NEAL & O'NEAL for appellant.

EDWARD G. HILL, ROBT. L. PAGE for appellee.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

Appellee was injured while in the employ of appellant company, and sued to recover damages on the theory that his injury was the result of his employer's failure to furnish him a reasonably safe place in which to work, also of its failure to warn him of the dangers incident to his employment. The defendant denied liability, and pleaded that appellee's injury was the result of his own negligence, or else resulted from a risk which he assumed in accepting the employment. The trial resulted in a verdict in favor of appellee, and the company appeals.

The ground relied upon for a reversal is primarily, the failure of the court peremptorily to instruct the jury to find for the defendant. Complaint is also made that the verdict is against the evidence, and that the court did not properly instruct the jury.

As gathered from the record, the injury occurred in the following manner: In the prosecution of its business, appellant operated what is known as a dry kiln. This was a building some 80 or 100 feet long, and perhaps 30 feet wide. The exact height is not given, but it was more than 10 feet. It had no windows or other openings, save at one end. This end was provided with a sliding door, which was operated like a stage curtain in a theatre. The door filled practically the entire end of the building, there being only a jam or facing on each side thereof of some eight or ten inches. The end of the building where the door was, was protected by a shed roof. The kiln was used in drying staves, which were taken in and out upon a truck, running upon tracks laid upon the floor. It was the custom of the employes to stack the staves upon the truck until the load was almost as high as the door was tall. The condition of the rails guiding the truck was bad, necessitating the use of several men, more than would ordinarily be required for that purpose, to push the loaded truck from the kiln. Appellee had been in the employ of appellant company

for some time, but had never worked in or about the kiln. On the day of his injury, he was directed by the foreman to go into the dry kiln and help push out a truck loaded with staves. He obeyed the order, walked back into the room, which was poorly lighted, passed around one end of the truck, stationed himself on the side thereof some three of four feet from the front end, took hold of it, and along with some five or six other men, who were behind and on the opposite side, started rolling it toward the door. When the front end of the truck had passed out of the door, it practically excluded the light and left the building quite dark. As appellee approached the doorway he discovered that there was not room for him to pass out along side the truck and he attempted to retreat, but the staves on the back of the truck had been so loaded that their ends projected out some eight or nine inches further over the side of the truck than those on the front end, the result was that appellee was caught by the projecting staves on the rear of the truck and pressed with great force against the jamb upon which the door was operated. He was severely injured, and the sum awarded him by the jury, to-wit, $1,875, is entirely reasonable, if he is entitled to recover anything.

The ground upon which it is urged that appellant was entitled to a peremptory instruction is, that the injury complained of was the result of a risk, which appellee assumed. If his injuries resulted from exposure to a risk of which he knew, or of which by the exercise of ordinary care he could have known, there would be much force in this argument; for, in undertaking the duties assigned to him, the servant ordinarily assumes such risks, but if he did not know of the existence of the danger and could not, by the exercise of ordinary care, discover it, he will not be held to have contracted against it. The risks which the servant assumes are those ordinarily and usually connected with the proper and customary conduct of the business, of which he has knowledge, or could and should have knowledge, by the exercise or ordinary care. In other words, before the servant can be charged with having assumed a risk, he must know of its existence or have had adequate means of ascertaining it.

In the case at bar, as developed by the evidence, appellee was suddenly called from his regular place of work and directed to discharge a duty in a department different from that in which he had theretofore labored. The place where he was sent to work was so poorly

lighted that he could not, and did not, advise himself of the dangers to which he was subjected. Although his employer knew that he was a new man in that department, that the light was poor, and that the duties assigned to him were attended with danger, he failed to warn or advise him as to this danger. It is the primary duty of the employer to furnish the servant a reasonably safe place in which to work, and if the employment is attended with unusual or hidden dangers, which would not be discoverable by the exercise of ordinary care, it is the further duty of the employer to advise or warn the servant of the existence of such danger. If, as alleged, the place where appellee was required to work was so poorly lighted that he could not, by the exercise of ordinary care, discover the dangers to which he was subjected, and appellant, though knowing of the existence of such danger, failed to warn appellee, appellee being in ignorance of its existence and acting under the direction of his employer, undertook the work, we are of the opinion that he cannot be charged with having assumed the risks, for a servant does not assume risks, of which he does not know and has no means of discovering by the exercise of ordinary care. The evidence shows that appellee did not know of the existence of the danger, and that the room was so poorly lighted that he could not discover it. In conection with the duty of the master to furnish a safe place in which to conduct its business, is the necessity or duty so to light the building that the employes may discharge the duties assigned to them, with reasonable safety to themselves. The master is not required to furnish the best light, but he must furnish such as is reasonably necessary to enable his employes properly to discharge their duties without being subjected to unnecessary dangers. The degree of care required of the master in this particular will necessarily vary with the kind and character of employment, and the master must, at all times, use ordinary care to make the place of employment as safe as the nature of the business will permit. If he has failed to make the place in which his employes are required to work as safe as he might have done by the exercise of ordinary care, knowing that the proper conduct of his business is attended with risks or hazards, the existence of which his employes do not know and may not, by the exercise of ordinary care, discover, then the master is charged with

the duty of warning his servants of the existence of such danger, and his failure to do so is negligence.

We are of the opinion that the case should have gone to the jury upon two grounds: First, the evidence abundantly shows that the room was not well enough lighted to enable one not acquained with the surroundings, to see or realize that there was not sufficient room to pass between the loaded truck and the door jamb, and this lack of light rendered the place where appellee was required to work unsafe; again, it is shown by the evidence that the staves on the truck were not regularly or properly ricked, the result of which was that when appellee discovered that he was about to be caught between the truck and the door jamb and attempted to avoid the injury, the projecting staves on the back of the truck caught and pinned him to the door jamb, causing his injury. The whole trouble was brought about by the failon the part of appellant to light the dry kiln sufficiently to enable its servants engaged therein to know and appreciate the dangers to which they were exposed. This being true, and known to appellant, it should have warned appellee of the danger to which he would be subjected, that is, it should have told him to be careful, that there was not space for his body to pass between the door jamb and the loaded truck. In its failure so to advise appellee, appellant was guilty of such further negligence as authorized a submission of its case to the jury.

Appellant, not having furnished appellee the means of advising himself of the dangers incident to his employment, cannot shelter itself behind the charge that the injury was the result of an assumed risk. In the many cases cited and relied upon by appellant, as supporting a contrary view, it is found upon examination that the servant in every instance, either knew of the existence of the danger, or by the exercise of ordinary care could have known of it. In no case has this court held that the servant assumed a risk, the existence of which he did not know and was without means of ascertaining.

In the case of Wilson v. Chess & Wymond, 117 Ky., 567, the servant knew of the existence of the danger and in full possession of this knowledge undertook the employment, the court held that he assumed the risk, saying:

"The conditions were openly visible to the laborer; he had only to use his eyes and most common experience

and his earliest instincts to fully appreciate the danger of his situation.''

In the case of Trosper v. East Jelico Coal Co., 135 Ky., 406, relied upon by appellant, the servant was injured by striking his head against a cross-beam near the top of a mine. The mine was well lighted. The servant had been employed therein for some time and was familiar with the surroundings. The court found that he had but to look to discover the danger. It was obvious, patent and apparent. In denying him the right to recover, upon the ground that the injury was the result of an assumed risk, the court, referring to the beams, said:

''Being there as a permanent part of the mine it was necessary for appellant in the exercise of ordinary care to recognize their (the beams) presence * * * he could not close his eyes to their presence and then recover for an injury which was entirely due to his failure to observe them.''

This latter case would be a parallel to the case at bar, but for the fact that there, the mine was well lighted, but here the kiln was at all times dark, and when the front part of the truck passed out of the door, according to the testimony, it was impossible to distinguish a person two or three feet away.

In Interstate Coal Co. v. Deaton, By, et al., 148 Ky., 160, which is the most recent utterance of this court upon this subject, the employe was denied the right to recover upon the ground that the danger to which he was subjected was either known to him, or by the exercise of any degree of care must have been known to him, the court said:

''Therefore, the place was perfectly safe for any one using ordinary care for his own safety. But appellee claims that he was inexperienced in driving wagons through a barn door, and did not know and appreciate the danger. The evidence shows that he was seventeen years old, and had worked on a farm. He was a boy of at least average intelligence. He admits that he ha⁅ gone in and out of the door in question on an average of eight times a day for eleven days. Therefore, he knew the construction and appearance of the door. Not only this, but he admits that before driving in, he stopped his wagon within about ten feet of the door. While he claims that he did not know of the danger, there are some things that one must know. He must know those things which are right before his eyes, and which he himself

admits having seen. The cross-beam was right in front of him. He intended to drive under. He admits that ho saw it, and bowed his head to escape being struck. He says that he was caught on the shoulder after he got his head under, and this was due to the fact that the front wheels rose upon the sill. From his own statement, he was seated about the middle of the wagon. Therefore, the front wheels struck the sill before he bowed his head. Although inexperienced in driving a wagon, he had sufficient judgment and discretion to know that if, in approaching an object right before his eyes, if he did not keep out of its way, he would be struck. His earliest instinct taught him this, and it must have been confirmed many a time before he reached the age of seventeen years. It is never necessary to warn a servant of a danger which he knows and appreciates." * * *

"As appellee knew the cross-beam was there, and was injured solely because he failed to lower his head and body enough to avoid striking it, though he had plenty of room in which to do so, it follows that appellant's motion for a peremptory instruction should have been sustained."

The difference between this case and the case at bar is apparent. There, the servant knew of the existence of the danger; here, he not only did not know of its existence, but was without means of ascertaining it.

The cases of L. & N. R. Co. v. Jones, 13 Rep., 542, and Mowrey v. Frazier, 120 S. W., 289, simply hold that where the danger is so apparent that it must have been discovered by the most casual observer, the servant is presumed to have assumed the risk. In neither of those cases, did it appear that the servant was not furnished with, or did not have, the means or opportunity of discovering the danger, and in that particular those cases are easily distinguished from the case at bar.

This case falls more nearly within the principle announced by this court in the following cases: Ahrens & Ott Mfg. Co. v. Rellihan, 26 Rep., 919; Wallace, &c. v. Bach, 30 Rep., 69; Ingram v. Covington, Flemingsburg & Ashland Railway Co., 30 Rep., 713; Finley v. Louisville Railway Co., 31 Rep., 740; Pfister v. Peter & Co., 117 Ky., 501; and Mason, Hanger & Coleman & Co. v. Kennison, 134 Ky., 844, and L. & N. R. Co. v. Adams, this day decided.

Appellant's next ground for reversal is, that appellee was not entitled to recover because of his own con-

tributory negligence, in that the injury resulted from his attempting to pass between the truck and the door jamb. The evidence does not, however, support appellant's theory upon this point. Appellee testifies, and he is the only witness upon that question, that he did not discover his danger until the car was passing out of the door. He then attempted to retreat, and in doing so, the staves caught him in the back, pressed him toward the door, so that he could not go backward, and was caught. The fact that he attempted to pass between the truck and the door jamb, cannot be charged as an act of negligence on his part. He was already caught in a trap, as it were, and his attempt to escape by passing between the truck and the door jamb, cannot properly be chargeable to him as negligence; and this is especially true, in view of the evidence to the effect that in the imperfect light, he did not know whether he could escape the threatened danger in that way or not. It is apparent from the evidence that, at the time he attempted to pass through the opening, if he did so, he realized that there was danger. The necessities were such that he was compelled to act quickly, and in attempting to go through this opening, which, at the time, appeared to him to be the only avenue of escape, he was not guilty of contributory negligence. It was held in L. & N. R. Co. v. Molloy's Admr., 32 Rep., 745, that, where one driving in a buggy in the highway attempted to cross a railroad track, which was so situated that he could not see a rapidly approaching train until he was in the act of crossing, he had the right to choose as to whether he would attempt to go on across, or turn around, or back his team, and the fact that he made an unwise choice and was killed by the train, did not make him guilty of contributory negligence. This same principle was announced with equal clearness in the case of South Covington & Cincinnati Street Railway Co. v. Crutcher, 135 Ky., 698.

Lastly, complaint is made that the court did not properly instruct the jury. Appellant introduced no evidence whatever, but relied upon that brought out by plaintiff to sustain its plea of non-liability. The plaintiff's case rested upon his allegation that the appellant was guilty of negligence in failing to furnish him a reasonably safe place in which to work, and having failed in this particular that it also was guilty of negligence in failing to warn him of the dangers incident to his employment, which were unknown to plaintiff and which,

by the exercise of ordinary care under the circumstances, could not have been known to him. The defense, relied upon, was that of contributory negligence and the plea of assumed risk. These respective claims and contentions in the controversy, were fully and fairly submitted to the jury by the instructions given.

Having examined the record with care, we fail to find any error prejudicial to appellant's substantial rights.

The judgment is, therefore, affirmed.