## Louisville & Nashville Railroad Company v. Vaughn.

(Decided July 1, 1924.)

### Appeal from Fleming Circuit Court.

1. Master and Servant—Signal for Tunnel Held Not for Benefit of Person on Hand Car Quarter of Mile Away.—Rule requiring whistle on approaching tunnel was for benefit only of persons in

tunnel, and failure to give such signal did not operate as breach of duty as to servant on hand car quarter of mile from tunnel.

2. Master and Servant—Lookout for Employees on Hand Car Held Not Required.—Mere knowledge of custom of railroad employees to use hand cars in going for pay checks whenever it suited their convenience did not require railway always to be on lookout for such employees and have its trains under control and give warnings of approach, it being duty of such employees to ascertain when trains were approaching.

WOODWARD & WARFIELD and OLIVER R. BRIGHT for appellant.

BABBITT & MORFORD and B. S. GRANNIS for appellee.

OPINION OF THE COURT BY SANDIDGE, COMMISSIONER—Reversing.

This is an appeal from a judgment of $6,000.00 for personal injuries.

The facts are these: Appellant was engaged in concreting Gap Tunnel, which was located about three miles south of Berea in Madison county. About fifty men were employed for that purpose, and they lived in boarding cars placed on switches near the tunnel and owned and controlled by appellant. The men were under two foremen, William Warren and Rufus Vaughn, and worked in shifts about equal in number. Each foreman had a cook for his gang. Hannah Vaughn was the cook for the gang in charge of Rufus Vaughn, while Mrs. Parrett was cook for the William Warren gang. The employees were paid every two weeks by the station agent at Berea. Sometimes they walked and sometimes they rode on hand cars furnished by the company to facilitate their work. Sometimes they went with the foreman, and sometimes without him. Sometimes they asked permission and sometimes they took the car without permission. Between three and four o'clock on the afternoon of December 16, 1920, Mrs. Parrett expressed a wish to go to Berea, and her husband, Neal Parrett, made up a crew consisting of himself and three other men to man the hand car, and Mrs. Vaughn either asked or was invited to go with them. At that time Mrs. Vaughn's husband, Rufus Vaughn, the foreman, had gone to work in the tunnel, and William Warren was in the camp cars. Neither was informed of the intended trip. The men of the party had already received their pay checks, and Mrs. Vaughn and Mrs. Parrett accompanied the party for the purpose

of getting their checks. In about fifteen minutes they reached Berea and stopped south of the tunnel at that place, and took the hand car from the track. Three of the men went up a path into town, while Mrs. Vaughn and Mr. and Mrs. Parrett walked through the tunnel to the depot to get the checks for the two women. They were detained at the depot about thirty minutes, and then went up town and shopped for an hour or more. About 5:30 p. m. they met at the hand car and started south for Gap Tunnel. At that time it was dark. None of the crew inquired about trains, paid any attention to the block signal system, or looked to see if any train was coming, nor did they place a lantern or other signal on the hand car, or put anyone at the brake, or take the precaution to notify the station agent that they were going to use the track with the hand car. When the car reached a point about 1,600 feet south of Berea tunnel, someone exclaimed, "There comes a train." Thereupon Mrs. Vaughn jumped off and was severely injured. She was followed immediately by Mrs. Parrett and her husband. After Mrs. Vaughn got off, the car went a distance of about sixty feet. The three men remaining on the car got off at that point and almost removed the car from the track before it was struck by the engine. Those on the hand car say that they did not hear the train whistle for Berea station, or for the tunnel. The rules require the engine to whistle on approaching a tunnel or abrupt curve. Foreman Warren did not give permission to the party to use the car, or know that the party was going to Berea. Whenever hand cars were used for the purpose of going to Berea, it was the rule to get a lineup of the trains and ascertain if any of the trains were coming and to take precautions against accident. According to the engineer and fireman in charge of the engine, they gave all the required signals for Berea station and the tunnel. The hand car was discovered when the engine was about one hundred yards north of the private road crossing. On ascertaining it to be a hand car, the engineer opened the whistle, applied the brakes in emergency and opened the sand box, using all means at his command to stop. There was no one on the hand car when the engineer first saw it, or after it was struck by the engine. It was a very unusual thing for a hand car to be out on the track after dark. It carried no light to give notice to the crew of the engine. There was further evidence that the distance from the south end of the tunnel to the point where

the hand car was struck was 1,659 feet, and the distance from the private road crossing to the same point was 341 feet. Though there was a curve in the track passing through the tunnel, it was not an abrupt curve. The assistant superintendent testified that the sole purpose of the rule requiring a whistle on approaching tunnels was to notify employees working in the tunnel.

The court instructed the jury in substance that if the company's agents in control of the engine failed to give the usual and customary signal of the engine's approach to Berea tunnel, and that, as the direct and proximate result of such failure, if any, the occupants of the hand car suddenly exposed to imminent danger of being run over by the engine, and in the emergency of the immediate peril appellee was forced from or leaped from the hand car and was injured, the jury should find for her. It needs no extended argument to demonstrate that this instruction was erroneous. Even without the uncontradicted evidence to that effect, it is apparent that the purpose of the rule requiring signals on approaching a tunnel was to enable persons using the tunnel to get out of the way of the trains. Here appellee and the other occupants of the hand car were more than a quarter of a mile away from the tunnel, and therefore not in a position where the failure to give the signals for the tunnel operated as a breach of duty imposed for their benefit. C. N. O. & T. P. Ry. Co. v. Brown, 192 Ky. 724, 234 S. W. 455.

But it is insisted that appellees, being licensees, were themselves entitled to be warned of the approaching engine. It is not every employee, much less licensee, that is entitled to be warned of approaching trains. The standard of care in this respect must be measured by the requirements of ordinary prudence in the practical operation of a railroad. The theory of the law is that the company owes precautionary duties to those whose presence is known or should be anticipated at a particular time and place. Without determining the precise relation which the occupants of the car bore to the company at the time of the accident, it is clear that they were out on the track without the knowledge of those in charge of the engine, or of any official whose duty it was to inform the engineer of their presence. Manifestly, it would seriously interfere with the operation of trains if mere knowledge of the custom of employees to use hand cars in going for their checks whenever it suited their con-

venience required the company always to be on the look-out for such employees, to have its trains under control and to give reasonable warning of their approach. Therefore, as between the company and employees using hand cars for the purpose indicated, the more reasonable and practical rule, as well as the one fraught with less danger to human life, is to place upon such employees, who have the means of ascertaining when trains are approaching, the duty to keep a lookout and take the necessary precautions to keep out of the way of trains, not only for their own protection, but for the protection of those on the trains, rather than on the company which has no means of knowing at what particular time such employees may decide to make the trip. Having this view of the question, we conclude that appellant's motion for a peremptory instruction should have been sustained.

Judgment reversed and cause remanded for new trial consistent with this opinion.