### Louisville & Nashville Railroad Company v. White.

(Decided May 6, 1927.)

## Appeal from Letcher Circuit Court.

1. Master and Servant.—Seventeen year old employee in railroad yard, injured while attempting to go between cars of freight train, who appreciated danger of such attempt, cannot recover from railroad on theory of failure of foreman to warn him of danger, since it is unnecessary to warn servant of danger which he knows and appreciates.

2. Master and Servant.—Employee in railroad yard, injured while attempting to go between cars of freight train, cannot recover on theory that he was not warned that cars were about to be moved, since he was between cars without invitation, and railroad was not liable unless it failed to exercise ordinary care to avoid injury after peril was discovered.

3. Master and Servant.—Seventeen year old boy, working in railroad yard, held to have reached age when he was prima facie charged with common sense of adult in realizing dangerous practice of going between cars of standing freight train.

WOODWARD, WARFIELD & HOBSON, ASHBY M. WARREN, MORGAN & HARVIE, FIELDS, DAY & FIELDS and C. S. LANDRUM for appellant.

F. W. STOWERS for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

The appellee, Grady S. White, while working for the appellant in its yards at Neon, Ky., was so injured that

his right leg had to be amputated about five inches below the knee. He brought this action to recover damages for that injury. On the first trial, he secured a verdict of $25,000.00, which the trial court set aside as excessive. On the second trial, he secured a verdict for $10,000.00, and from the judgment entered on that verdict, the appellant brings this appeal.

The appellant urges many grounds for reversal, but the controlling one is that based on its contention that it was entitled to a peremptory instruction. The appellant introduced no testimony except that of a civil engineer, who only described the yards in which this accident happened, so that this case must be measured by the testimony introduced by the appellee and the fair inferences to be drawn from it.

At the time of the accident, the appellee was a boy 17 years old and small for his age. He had lived in the back country, but about a month prior to his accident he came to Neon seeking employment. By importuning the appellant's yard foreman, he finally secured employment in the yards at Neon. He was attached to one of the yard crews, whose duties were to inspect freight trains for hot boxes and perhaps other defects when they came into the yards, to see that the boxes were properly oiled and packed, and to do general work about the yards. The freight yards at Neon lie on a piece of level ground stretching from Boone creek to a hillside. Next to Boone creek, and running parallel with it, is a track called the caboose track. Next to this track comes the main track, and then come seven tracks numbered 1 to 7, respectively, then comes the cinder pit track, then some houses belonging to the railroad company, and then the hillside. The yards are approximately 1,500 feet in length. All of the tracks finally merge at each end of the yard into the main track, which leads northerly to McRoberts and southerly to Louisville.

On the day of the accident, a freight train had come in on track No. 3. One of the cars had a hot box which it was necessary to cool and repack before the train could proceed on its journey. Appellee seems to have been in one of the houses next to the hillside. He was ordered by one superior in authority to him to get a couple of buckets, fill them with water from the hydrant which was next to the cinder pit track, and carry them across to where the hot box was for the purpose of cooling it. Ap-

pellee filled his buckets at the hydrant and started across to track No. 3. When he came to track No. 4 he found there a long freight train, neither end of which he says he could see because they were on the two end curves in track No. 4 necessitated by its junction with the tracks leading into the main track. Although the appellee admits that he could have safely walked around either end of the train, he says that he did not do so because the distance was too great and he was in a hurry. He further says that, because it was too awkward with two buckets of water to climb the ladder on the side of the freight car and then go over the coupling between the cars, he went under the coupling with his water. He had gotten the water safely over track No. 4, but just as he was emerging on the far side of the track from under the coupling of the cars, and while his right leg was still between the rails of track No. 4, he heard a bumping of the cars on this track. He says he at once realized the danger he was in and attempted to get his right leg out, but before he could do so the first wheel of the double truck of the freight car which was moving towards him passed over his foot. However, before the second wheel could pass over this foot, he was able to withdraw the leg. The crushing of his foot as thus described necessitated the amputation of the leg as before mentioned.

Appellee claimed that his injury was caused by the failure of the appellant to warn him, an inexperienced boy, of the danger of the work in which he was engaged at the time of his accident, and by appellant's failure to give him any warning when he was under the cars that they were about to be moved. The trial court submitted this case to the jury on these two claims. As there was no evidence that any warning that the cars were about to be moved had been given, the instructions of the court amounted practically to a peremptory to find for the appellee.

Appellee knew that Neon was a very busy yard. He testified with some detail about the many coal operations in that section of the county which this yard served. He said:

> "There were usually plenty of cars on the tracks. It was flush times then and plenty of coal being carried and shipped. . . . There was a lot (of cars) handled (in the yard) at the time I was injured."

Appellee, though small for his years, was intelligent and alert. His testimony demonstrates that fact. That he knew and appreciated the danger of going between cars and under their couplers is established by his own evidence, for he said that when he was between the cars which ran over him, he knew *the instant* he heard the slack being taken up by the cars bumping into each other as they backed toward him and before the car which ran over him had ever moved that he was in a place of danger. Although he said his foreman did not warn him of the danger of going between the cars, the fact remains that he knew of it and appreciated it. As we said in Interstate Coal Co. v. Deaton, 148 Ky. 160, 146 S. W. 396: "It is never necessary to warn a servant of a danger which he knows and appreciates."

It is clear, therefore, that appellee cannot recover in this case on the theory of the failure of his foreman to warn him of the danger of going between cars; nor can he on the theory that the appellant gave him no warning when he was in between the cars of the fact that the cars were about to be moved. In Age's Adm'r v. L. & N. R. Co., 148 Ky. 219, 146 S. W. 412, we said:

" . . . The law in this state is well settled that, where one, whether employee, licensee, or trespasser, is injured while attempting to pass between, under, or over standing cars, without invitation, express or implied, to do so, there can be no recovery, unless those in charge of the train, after his peril is discovered, fail to exercise ordinary care to avoid injuring him."

But slight reflection should convince one of the soundness of this rule. If a railroad is under a duty to warn every person who may happen to be between cars of a standing train that such train is about to be moved, whether or not the railroad is charged with notice of the presence of such person between the cars, an intolerable burden would be placed upon the railroad. In a busy yard, such as that of Neon, the blowing of a whistle or the ringing of a bell would not be an adequate warning, for no one in between cars could tell whether the whistle was being blown or the bell rung for that train or for those on adjacent tracks. About the only adequate warning would be to send an employee down the length of the train to warn those who might be in between the cars of

the purpose to move them and even this would not suffice, for by the time such employee got to the end of the train some one might have gone in between the cars at the front of the train.　It is so easy, though maybe inconvenient, for one to wait until the train has moved off or to pass around either end, and common sense dictates that he who would cross a track on which there is a standing train should adopt one or the other of these alternatives. Of course, if such a person is in between the cars by invitation, express or implied, a different rule prevails, for then the railroad is charged with notice of his presence, and it may then easily warn him of the purposed movement of the train.　To the same effect as the Age case are Southern R. Co. v. Thomas, 92 S. W. 578, 29 Ky. Law Rep. 79; Brackett's Adm'r v. L. & N. R. Co., 111 S. W. 710, 33 Ky. Law Rep. 921, 19 L. R. A. (N. S.) 558; L. & N. R. Co. v. Hocker, 111 Ky. 707, 64 S. W. 638, 65 S. W. 119, 23 Ky. Law Rep. 982, 1274; C., N. O. & T. P. R. Co. v. Helm, 149 Ky. 340, 148 S. W. 25; Jones v. I. C. R. Co., 104 S. W. 258, 31 Ky. Law Rep. 825, 13 L. R. A. (N. S.) 1066; Landers v. C., N. O. & T. P. R. Co., 156 Ky. 301, 160 S. W. 1050; and Koke's Admr's v. Andrews Steel Co., 149 Ky. 627, 149 S. W. 968.

Appellee was not in between the cars which ran over him by an express invitation.　Was he there by any implied invitation?　He argues that he was, and to support that contention says that he had seen other men working in the yards, and especially his own foreman, go in between cars and under couplers for the purpose of crossing tracks while in the discharge of their duties.　Indeed, he says that he had on one or two occasions assisted his foreman in carrying objects of weight and bulk across the yards, and that while so doing they had, in order to pass standing trains, gone in between cars and under couplers.　It is plain that these men were doing this for their own convenience.　It was a dangerous practice as all of them knew.　Dave Hammonds so testified.　Appellee knew, as we have seen, that it was dangerous. Neon was a very busy yard.　Cars were constantly being shifted about in it.　That the men, to save themselves the labor of following the safer ways obviously open to them of going around the end of the train or crossing over the couplers, chose the dangerous method of going under the couplers, cannot throw upon the railroad the burden of giving them warning of the contemplated movement of

the cars, since such a burden as we have seen, if adequately discharged, would be intolerable. Men of common sense, and appellee had reached the age when he was prima facie charged with the common sense of an adult (L. & N. R. Co. v. Hutton, 220 Ky. 227, 295 S. W. 175), must have known that such a dangerous practice as these men were indulging in for their own convenience was not an invitation on the part of the carrier for them so to do. In the case of L. & N. R. Co. v. Vaughn, 204 Ky. 156, 263 S. W. 721, the facts were that certain employees of the railroad were in the habit of using hand cars in going for their pay checks whenever it suited their convenience. One of these hand cars, while out on the road, was run into by a train, and, in discussing what warning was due the occupants of the hand car, we said:

> "Without determining the precise relation which the occupants of the car bore to the company at the time of the accident, it is clear that they were out on the track without the knowledge of those in charge of the engine, or of any official whose duty it was to inform the engineer of their presence. Manifestly, it would seriously interfere with the operation of trains if mere knowledge of the custom of employees to use hand cars in going for their checks whenever it suited their convenience required the company always to be on the lookout for such employees, to have its trains under control, and to give reasonable warning of their approach. Therefore, as between the company and employees using hand cars for the purpose indicated, the more reasonable and practical rule, as well as the one fraught with less danger to human life, is to place upon such employees, who have the means of ascertaining when trains are approaching, the duty to keep a lookout and take the necessary precautions to keep out of the way of trains."

And so, if employees, by dodging in between cars for the purpose of crossing tracks on which there is a standing train when it suits their convenience, can throw upon the carrier the duty of giving them warning that the train is about to be moved, then manifestly a burden would be thrown upon the railroad of such nature as to seriously interfere with the operation of its trains. The more

reasonable and practicable rule, as well as one fraught with less danger to human life, is to place upon such employees the duty of following the safer methods of going around the end of the train or at least over the couplers.

We are therefore of the opinion that, as appellant did not know of appellee's peril and was not charged with such knowledge, it owed him no duty to warn him of the purposed movement of the car which ran over him. Since appellee was not entitled to recover on either theory of the case upon which he relied, the court should have peremptorily instructed the jury to find for the appellant. Having reached this conclusion, we find it unnecessary to pass on the other questions raised by the appellant.

The judgment of the lower court is therefore reversed, with instructions to grant appellant a new trial in conformity with this opinion.

Whole court sitting.