## Jones v. Cumb. Tel. & Tel. Co.

(Decided October 6, 1910.)

Appeal from Hopkins Circuit Court.

1. Telephone Companies—Duty and Liability Of in Furnishing Telephone Service.—A telephone company is a common carrier, engaged in a public service, holding itself out to the public in consideration of certain fees exacted, as able, ready and willing to enter into contracts that will place persons in direct communication with each other and enable them to talk one to the other.

2. Same—When Contract Is Entered Into.—Whenever a person, desiring the service, pays the stipulated price, or it is sought under an arrangement that will enable the company to collect the usual charge, a contract is entered into between the person desiring the service and the company, by which the company obliges itself to furnish the required service, and failing to do so may be compelled to respond in damages.

3. Same—Payment of Service Fee.—It is not necessary that the service fee should be paid by the person sending the message, or that the contract to pay it should be entered into by him. If the fee is paid, or an agreement to pay it is made with a person

accepted by the company as responsible, the contract to render the service is as valid as if the fee had been paid in advance by the sender or sendee.

4.  Same—Rights of Non-Subscriber Using Subscriber's Telephone.— If a regular subscriber for telephone service agrees that if a non-subscriber uses his telephone he will pay the fee; and he permits the non-subscriber to use it, he is liable for the service fee, and the non-subscriber using it occupies the same attitude as the subscriber. If the subscriber could recover for a breach of contract, so can the non-subscriber.

5.  Same—Not Obliged to Render a Gratuitous Service.—A telephone company is not obliged to render gratuitous service; and being under no duty, there is no liabilty upon its part for failing to do that which its duty to the public does not require it to do.

GIBSON & KINCHELOE for appellant.

MAURICE K. GORDON, HUNTER, WOOD & SON, GORDON & GORDON & COX for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

This action was brought by the appellant against the appellee company to recover damages for its failure to furnish telephone connection for the transmission of a message informing him of the death of his son. The lower court sustained a general demurrer to the petition as amended, and the only question before us on this appeal is, did the petition as amended state a cause of action?

It averred that the appellant's son was a prisoner in the Eddyville State Penitentiary, and was confined in the hospital suffering from a serious attack of typhoid fever. That about 11 o'clock p. m., on June 29th, 1909, the penitentiary physician called over the prison telephone appellee's operator, at the time in charge of its exchange in Eddyville, and put in a call for the appellant, who lived at Madisonville, Kentucky, telling the operator at Eddyville at the time that the appellant's son was dying, and it was important that prompt service be given; that appellant had the telephone in use in Eddyville in his residence on the Madisonville exchange, and the operator there would have no trouble in getting in connection with him, and that the operator at Eddyville informed the physician that he would promptly put him in connection with the appellant. It was further averred that the operator at Eddyville, or operators at other

exchanges between Eddyville and Madisonville, negligently and carelessly failed to put appellant in connection with the physician at all; that his son died about 6 o'clock a. m., on June 30, 1909; that if appellee's operators had promptly connected the appellant with the physician, as they might have done by the exercise of reasonable care, he could and would have reached the bedside of his son some hours before he died. It was further averred that the State of Kentucky had for many months prior to this time maintained one of appellee's telephones in its penitentiary at Eddyville, and was a regular monthly subscriber of appellee company; that it had long been the custom and habit of appellee and its agents in charge of the exchange at Eddyville to charge the character of message attempted to be sent to appellant to the State of Kentucky, and to the telephone which it then had rented; that the State of Kentucky paid appellee each month for all messages sent over the telephone from the penitentiary, and that the physician at the penitentiary had authority to use for and at the expense of the state the telephone in the manner he did, and this fact was known to its Eddyville agent, who also knew that the state would on the first of the following month pay the fee for the service. The demurrer was sustained upon the ground that as the physician did not pay or offer to pay, or intend to pay, the service fee, and the state would not be liable for it because the physician had no authority to bind it, therefore neither the appellant nor any person acting for his use and benefit made an enforcible contract with the appellee for the connection.

In support of this ruling of the court, the argument is made that in order to maintain an action like this it is essential that there be a contract relationship between the company and the person desiring the service. Or, in other words, that the service must be paid for in advance or be demanded under a contract then or theretofore made by the party desiring the service by virtue of which the service fee can be collected; and as neither of these conditions existed, the action of the court was correct.

On the other hand, it is the contention of the appellant that as the State of Kentucky had one of appellee's telephones in its penitentiary for the use of the officers and other persons in charge, that all of the persons authorized—as was the physician—to use the telephone,

had the right to do so, and the State was legally bound to pay for the service at the end of the month to the same extent as it was to pay other charges against the telephone. And therefore a contract had been entered into by which the State became bound and liable for the service fee, and under this contract the physician had authority to demand the service, and the company was under the same duty to render it as it would have been if the service fee had been paid or tendered at the time. It is not usual or customary for telephone companies to ask or expect a fee for merely putting in a call for a party. The custom is to put in the call and wait until the party called for is on the line before demanding the service fee, but in order to decide the real question presented, we will treat the case as if the company had the appellant on its line and was ready to furnish the connection upon the payment or tender of the fee.

At the outset we may say that in disposing of the question presented, we do not intend to question or dispute the proposition that before there can be a recovery for the negligent failure of a telephone company to render such service as was sought in this case, it is necessary that it should appear that the company was paid or offered to be paid for the service, or that it was demanded under contract conditions that would secure to the company its charges. A telephone company is under no duty to render a gratuitous service, and being under no duty there is no liability upon its part for failing to do that which its duty to the public does not require it to do. It is a common carrier of intelligence, engaged in a public service, holding itself out to the public in consideration of certain fees exacted, as able, ready and willing to enter into contracts that will place persons in direct communication with each other, and enable them to talk one to the other. It may hold itself out as willing to render other services, such as the transmission of messages, and if so its duty and liability would be measured by the same standard as that applied here. But, as this case only presents the aspect of its duty under the facts stated, we will in discussing it refer to its duty in this respect only. Whenever a person desiring the service pays the stipulated price, or the service is sought under an arrangement agreed or consented to by the company, that will enable it to collect the usual charge, a contract is entered into between the person desiring the service and the company, by which the company obliges itself

to furnish the required service, and failing to do so may be compelled to respond in damages. It follows from this that an action against the company for a failure to render the service required, is grounded upon a breach of its contract obligation.

But we do not think it is necessary in order to recover against a telephone company for a negligent failure to place persons in communication with each other that it should appear that the service fee was actually paid by the person desiring the  service  or that the contract to pay was entered into by him. It is not material who the fee is paid by or with whom the contract to pay it is made. If the fee is paid or an agreement to pay it is made with a person accepted by the company as  responsible, the contract to render the service is as valid as if the fee had been paid in advance by the person desiring the service. It is the payment of the charge or the agreement to pay it by a person accepted  by the company that fixes the contract duty of the company.

It is a matter of common knowledge that frequently long distance messages for which a special fee is exacted are sent by non-subscribers from telephones installed in homes and business places by the authority, or with the consent and approval of the person in whose home  or place of business they are installed, and with the implied or express agreement between the subscriber and the company that they shall be charged to the telephone and paid as other charges against it. To illustrate: If "A" has a telephone in his place of business under contract arrangement with the company by which he is to pay the charges  against it every month, and "B," a non-subscriber, with the consent and approval of "A," uses the telephone for the purpose of communicating with another, there can be no doubt that "A" would be liable to the company for the service fee; and as a consequence of this, that the non-subscriber could maintain an action against the company for its negligent failure to render the service required. In short, the non-subscriber would occupy precisely the same attitude as the subscriber; and if the subscriber could recover for a breach of the contract, so can the non-subscriber. No reason can be given why the same measure of duty and liability on the part of the telephone company should not be applied to the subscriber and the non-subscriber. The telephone is used by each under circumstances that

secure in the same manner and degree the compensation due the company for the service.

We may further add that if the company does not desire to render and is under no contract obligation to furnish the service to a non-subscriber, who uses the telephone with the consent of the subscriber, then when such service is sought by the non-subscriber the company should at once inform him that the desired service can not be furnished except at a regular pay station, and if it fails to do this the non-subscriber has the right to assume that the service will be furnished; and by its failure to notify him to the contrary, the company agrees that it will furnish the service under its contract with the subscriber, and if, under this, all charges against the telephone are paid or agreed to be paid at stated periods, the situation of the non-subscriber will be exactly the same as if he had paid or tendered in advance the service fee.

The telephone was installed in the penitentiary for the purpose of being used; and, accepting the averments of the petition as true, as we must for the purpose of testing its sufficiency on demurrer, it is admitted that the charges for its use were presented monthly to the State through the penitentiary officials, and paid. And further admitted that the physician in charge had the right to use the telephone for the purpose of sending this message, and that the State would pay the fee at the time that it paid the other charges against it for the use of the telephone.

The question before us then comes down to this: Could the telephone company recover of the State the fee charged for sending and delivering this message? When the company installed the telephone in the penitentiary it consented in the absence of any showing to the contrary, and there is none, that any person with the approval and authority of the penitentiary officials might use it, and the service fee would be charged to the telephone, and if used with their authority and approval, it is manifest that the company could collect from the State the fee for the service rendered. Suppose the warden, who is the person in charge of the penitentiary, had requested this service; would it be contended that no enforcible contract had been entered into by which the company could collect the fee? Or, suppose that it had been requested by one of the members of the State Board of Prison Commissioners, who have general

supervision of the prisons in the State; could it be said that no contract had been made for the payment of the fee? We think a negative answer must be returned to each of these questions, and can see no difference between the legal and contractual effect of the service sought in person by the warden or a member of the Board of Prison Commissioners, and service sought by one of the officers of the penitentiary by authority or approval of the prison authorities, in relation to matters connected with the affairs of the penitentiary.

We do not think it worth while to enter into an extended discussion of the proposition submitted, that the State cannot be sued without its consent, or that the prison board cannot be sued except in certain cases, or that the members of the board are not personally liable for contracts made by them in an official capacity. To say that no enforcible contract had been made for any of these reasons would be to put the case upon narrow grounds, entirely destitute of merit. The telephone in the Eddyville penitentiary should be treated exactly as a telephone in any other place of business. A person with the consent and approval, verbal or written, of the prison officials, had the same right to use the telephone there as he would to use the telephone in any place of business with the consent and approval of the person who had secured its installment and to whom the company looked for compensation for its use. The telephone was put in the Eddyville penitentiary to be used just as other telephones are that are placed in business houses, and we can perceive no reason why the same rules should not be applied to it as are applied to other telephones. The message the physician desired to send was an important one; it concerned prison affairs, and was such a message as he had authority to send, and the State was under the same contractual obligation to pay for it as it was for the use of the telephone for any other purpose.

Although we have not found any authority on the principal question at issue, we believe the conclusion reached is sound in principle and that the petition as amended stated a good cause of action, and the demurrer should have been overruled.

Wherefore the judgment is reversed with directions to proceed in conformity with this opinion.