## Helm v. Cincinnati, New Orleans & Texas Pacific Railway Company.

(Decided December 3, 1913).

### Appeal from Boyle Circuit Court.

1. Railroads—Personal Injuries—Federal Employers' Liability Act—Negligence—Damages.—The Act of Congress, known as the Federal Employers' Liability Act, gives an action for damages caused by the negligence of any of the employees of a railroad company; and as the Act does not define the term "negligence", and in no way limits the application of the common law rule upon that subject, it is the common law of the State where the accident occurred to which we must look in determining whether the acts complained of amount to negligence.

2. Railroads—Fellow Servant Rule—Abolition of by Federal Employers' Liability Act—Personal Injuries—Negligence.—Although the

Federal Employers' Liability Act abolishes the fellow servant rule, and does not permit contributory negligence upon the part of the plaintiff to bar a recovery, nevertheless the common law rule still requires that in order for the plaintiff to recover in a suit for damages for personal injuries, he must show that the injuries resulted in whole, or in part, from the negligence of the employees of the carrier, or by reason of some defect or insufficiency due to the carrier's negligence.

3. Negligence—Definition of Negligence.—Negligence is a failure to discharge a duty; it may be the omission of a duty, or doing that which is contrary to a duty; and where there is no duty, there can be no negligence.

4. Railroads—Risk.—Persons take the risk, who go in between cars standing upon a track, without the knowledge of the men handling the cars, and when they have no reason to anticipate their presence.

5. Appeal—Opinion on First Appeal Law of Case.—The opinion of the Court of Appeals upon a first appeal, is the law of the case thereafter; and, where the facts shown in the second trial are substantially the same as on the first trial, the ruling upon the second appeal will be the same as on the first appeal.

EMMET PURYEAR, ROBERT HARDING, J. W. RAWLINGS and O'REAR & WILLIAMS for appellant.

CHALES H. RODES, NELSON D. RODES and JOHN GALVIN for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

On April 3rd, 1911, the appellant, Helm, was severely injured while in the service of the appellee. Helm was employed as a special agent or detective by the appellee, his duties requiring him, among other things, to inspect the seals of cars, broken cars, and cars which had been broken into.

At the time he received the injuries referred to, Helm was engaged in examining the seals on the ends of two cars which were coupled together in the yard of the appellee's road in Danville. While examining the seals he was in between the two cars, with one foot on the brace rod on the end of one car, and the other foot on the brace at the end of the other car. While he was in this position a switching or yard crew "shunted" or dropped a car onto the side or house track which was in front of appellee's depot, striking the two cars upon which appellant was standing, throwing him off and breaking his arms and injuring him internally. He brought his action and recovered a verdict for $8,000.00

damages; but, upon an appeal to this court, that judgment was reversed on June 21st, 1912, and remanded for a new trial consistent with the opinion of this court. See 149 Ky., 340, where the facts are set forth with more minuteness.

The original action had been brought under the State law; and the effect of the opinon of this court was to direct the trial court to peremptorily instruct the jury to find for the defendant upon another trial, if the evidence was substantially the same. After the reversal Helm dismissed his original action and instituted this action on August 30th, 1912, under the Act of Congress known as the Federal Employers' Liability Act. Upon the trial of this action the circuit court, after hearing all the evidence for both parties, followed the former opinion and peremptorily instructed the jury to find for the defendant; and from a judgment upon that verdict Helm prosecutes this appeal.

It is insisted that the trial court erred in following the opinion of this court on the former appeal, for the three following reasons: (1) Because that opinion was rendered in a case brought under the common law of the State of Kentucky, while the right of action in the present suit is one arising under the Federal Employers' Liability Act; (2) because the facts on the present trial of this case are materially different from the facts shown on the trial of the original action; and (3) that the violation of the rules and regulations of the railway company by its employees furnish a ground of liability against it.

1. It is true Helm bases his right to recover in this action on the Federal Employers' Liability Act, while the original case was brought under the common law of the State of Kentucky. This vital question, however, presents itself: When does the Federal Employers' Liability Act give an action for negligence? If the action is based simply upon negligence without any definition or limitation of that term as known and applied under the common law, then it is a familiar rule of construction that the term is to be given its ordinary significance as fixed by the common law. The action is given by the following language taken from section 1 of the Federal Employers' Liability Act:

"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That every common carrier by railroad while

engaging in commerce between any of the several States or Territories, or between any of the States and Territories or between the District of Columbia or any of the States or Territories or between the District of Columbia or any of the States or Territories and any foreign nation or nations, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; and, if none, then of such employee's parents; and if none, then of the next of kin dependent upon such employee, for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves or other equipment.''

It will be observed, therefore, that the Act of Congress creates a right of action only when there has been negligence upon the part of the railway company's employees to the injured employee, and when this negligence has caused the injury or death of the employee.

The Act of Congress does not undertake to define negligence, and in no way limits the application of the common law rule upon that subject; and since there is no Federal common law, it is the common law of the State where the accident occurred to which we must look in determining whether the acts complained of amount to negligence.

In Long v. Southern Ry. Co., 155 Ky., 289, we said:

''While it is true that the Employers' Liability Act has abrogated the fellow servant doctrine, and that the contributory negligence of the injured employee does not bar a recovery, but simply diminishes the damages in proportion to the amount of negligence attributable to such employee, yet it is still necessary to show that the injury resulted in whole or in part from the negligence of the officers, agents or employees of the carrier, or by reason of some defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves or other equipment.''

See, also, St. L., I. M. & S. Ry. Co. v. McWhirter, Admx., 155 Ky., 304.

In considering the question whether there was, in this case, negligence upon the part of the company, we must, therefore, apply the principles announced in the opinion upon the original appeal, unless there be, (1) some change in the rule provided and required by the Federal Employers' Liability Act, or (2) a material change in the facts upon this trial when compared with the facts shown upon the original trial.

To meet the first difficulty above suggested, appellant insists that the Employers' Liability Act having abrogated the fellow servant rule and the doctrine of contributory negligence in so far as it could bar a recovery, the case should have been submitted to the jury, because the opinion in the original case directed a peremptory instruction upon the ground that the evidence showed that Helm had been guilty of contributory negligence.

If it be true that the opinion directing a peremptory instruction for the defendant in the original appeal was rested upon the ground of Helm's contributory negligence, and the question of negligence upon the part of the company has been made out in this case, then the case should have gone to the jury; but, if the opinion in the original appeal was rested merely upon the fact that Helm had failed to show negligence upon the part of the company, and the facts in that respect upon this appeal are not materially different from the facts of the original appeal, then the circuit judge was right in following the opinion upon the former appeal and giving the instruction to find for the defendant, as he did.

In C., N. O. & T. P. Ry. Co. v. Harrod's Admr., 132 Ky., 452, we said:

"Negligence is a failure to discharge a duty. It may be the omission of a duty, or doing that which is contrary to a duty. Where, then, there is not a duty, there is not negligence. An act may savor of negligence as to one, and be innocuous as to another, because a duty may be owing to one and not to the other."

A careful reading of the opinion upon the original appeal shows that the action was based upon the negligence of the company alleged in two respects: First, in sending the car in on the track without anybody on it to keep a lookout or to control the car, and second, in sending the car against the car standing upon the house track with great and unnecessary force and violence.

The opinion then proceeds to examine the facts relating to those two propositions for the purpose of ascertaining whether the company had been guilty of negligence, and in answer to the first proposition it expressly held that the company was not negligent in failing to have a lookout upon the top of the car, because if there had been a lookout he would not have been able to see Helm, who was hid between the cars; and that, therefore, he could not complain that a lookout was not maintained.

As to the second proposition that the company was negligent in "shunting" the car against the cars standing on the house track with great and unnecessary force and violence, the opinion further held that the switching crew were using the house track as it had the right to use it, and that Helm having concealed himself between the cars, there could not be any recovery against the company upon this ground. And in answer to the charge that the car was "shunted" against the other two cars with unusual and unnecessary force and violence, the opinion expressly said that the switching crew, having the right to bump the car against the other two cars standing on the house track, the company was no more liable for doing what it did, than it would have been if the switching crew had brought the car in, attached to the engine, and so bumped it against the other cars with the same force. In closing the opinion, the court said:

"The question, therefore, comes to this: Did they owe Helm any duty? For there can be no negligence without the violation of some duty. If those moving the car knew or had reasons to anticipate the presence of persons on the other cars, they should have made the movement with ordinary care for the safety of such persons, but when they have no reason to anticipate the presence of anybody on the cars, no duty exists to exercise care for the safety of persons there. We had this question before us in the case of L. & N. R. R. Co. v. Hay's Admr., 145 Ky., 655, in which the lower court, by one of its instructions authorized the jury to find for the plaintiff if the coupling of the cars was made with unusual or extraordinary force. Criticising the instruction we said:

" 'This instruction is too broad. The defendant's servants were not required to exercise care for the decedent's safety, unless they knew or in the exercise of

ordinary care should have anticipated the presence of persons on the car.'

''We also said in that case that the defendant was not liable unless the coupling was made with unusual and unnecessary force and with such violence as to show want of ordinary care in the handling of the car. But there cannot be a want of ordinary care in the handling of a car as to persons whose presence the trainmen have no reason to anticipate and as to whom the trainmen are not required to exercise care. We have held in several cases that persons who go in between cars standing on a track, without the knowledge of the men handling the cars and when they have no reason to anticipate their presence, take the risk. (L. & N. R. R. Co. v. Hocker, 111 Ky., 707; Wilson v. C. & O. Ry. Co., 130 Ky., 385; Age's Admr. v. L. & N. R. R. Co., 148 Ky., 219.) It seems to us the principles applied in these cases must necessarily be applied here, for it cannot be maintained that the switching crew, in making the bump in question, failed to exercise ordinary care as to one to whom was owed no duty to exercise care, as they had no reason to anticipate, under the circumstances, that any one was on the car.''

From this explicit language the conclusion cannot be avoided that the opinion upon the former appeal directed the peremptory instruction solely upon the ground that no negligence had been shown upon the part of the company's employees; it was not rested upon the ground of the contributory negligence of Helm.

2. It is insisted, however, that the facts of negligence shown on the part of the defendant on the last trial are materially different from those shown upon the first trial, in several material respects, which we will now consider.

In the first place, it is pointed out that the opinion says Helm went upon the house track where eleven freight cars were standing, while in the present case it appears that when Helm arrived at the yards between 8 and 9 o'clock a. m. there were only three cars on the house track, and that none was put there until between 10 and 11 o'clock, when the switching crew kicked the car against the two cars standing upon the house track. The difference, if true, is unimportant. Moreover, upon this point all the switching crew testified that it was but a short time between their taking the eight cars out from the house track until the empty car was returned

to the track; while Helm stated that he did not remember whether he heard or saw the eight cars taken out from the house track, but that the evidence he gave on the first trial as to that matter was true, and if he did hear the cars being switched upon the house track, it was while he was in the freight depot. On the first trial Helm stated that while he was in the freight depot he saw the cars moving out from the house track, and knew that the switching crew was taking cars from the house track and placing them back upon it.

It is said this evidence is in conflict with another statement of Helm, wherein he says there was no switching there at all, nor had there been any since he had been there, and that if there had been any switching on the house track it was done before he got there. This statement was made by Helm during the early part of his direct examination, and before his mind had been refreshed by the testimony which he gave at the first trial of the case, which we have above referred to.

Neither is it correct to say that the three cars at the platform had not been turned over to the switching crew, and were in charge of the office men. The proof shows the foreman of the switching crew had given the freight boss the necessary notice before the switching began. Helm himself said that when he went out on the platform immediately before the accident, the freight men were not there.

Taking his testimony as a whole, we do not see any material change in it, or that it is any stronger for him upon the second trial upon these points, than it was upon the first trial.

As a second material change appellant points out that in the opinion upon the former appeal the court said that Helm had concealed himself between the cars and intentionally kept the persons in charge of the yards in ignorance of his whereabouts and of what he was doing, and that there is nothing in the present record to show that fact. It is uncontradicted, however, that Helm was hidden from the view of the switching crew; and, that being true, it is unimportant whether he concealed himself intentionally or unintentionally. It is said, however, that he was not concealed from the view of persons on the depot platform or in the office, and that if they could see him they would have been in a position to give warning to the switching crew and

thereby prevent the injury. There is evidence, however, tending to show that Helm was concealed even from those standing upon the platform and only a few feet away from him; and the fact that Helm had busied himself about the office for sometime before he went out and placed himself between the two cars does not show that any one in the office saw Helm when he was between the cars. Helm so concealed himself that the switching crew could not see him, and he has wholly failed to show that any one in the office or upon the platform saw him after he had placed himself between the cars.

From these facts, which relate wholly to the negligence of the yard crew, we fail to see any substantial difference between the evidence upon this trial and that upon the original trial.

3. In the third place, apellant insists that the appellee's servants violated a rule which required them in switching, whenever it is necessary to disturb cars that are being loaded or unloaded, to give notice to persons in and about cars that are to be moved, and that when cars are so moved, they must be returned to the same position as found. Appellant insists that he had a right to assume that this rule would be obeyed by the yard crew, and that he acted upon this assumption in going between the cars to discharge the duties required of him by the company, and that it is immaterial whether the yard crew could or could not have seen him there, or did or did not know he was there, when they turned the car loose. The question arises, however, did the yard crew violate the rule? Evidently the primary object of the rule is to protect laborers who are loading and unloading cars; and when the track on which a car was standing had been used for switching purposes, the car was to be returned to the place from which it was taken so that laborers would not have to go elsewhere to find partially loaded or unloaded cars.

In applying the rule to the employees of the appellee in loading and unloading freight at the depot platform, it was only necessary that notice be given them both before and after switching on the house track had been completed. That was done in the present case by the foreman of the switching crew notifying the foreman of the freight house employees that switching was about to commence on the house track, and the freight house employees were, in turn, notified of this fact by their boss. None of those employees were injured; and to

hold that the switching crew under this rule would have to notify Helm, who had no connection with the loading or unloading of the cars, and who had concealed himself between the cars, would be to stretch the rule beyond any reasonable construction.

Finally, it is insisted that this record does not show that Helm knew the house track was liable to be used at any time while he was between the cars, while in the former opinion it is suggested he did know that fact. Nevertheless, all the facts upon which that statement of the opinion was based are in this record; and the conclusion, that Helm being an old railroad employee knew that the freight cars were liable to be moved at any moment, must be drawn from the facts of either record.

All the evidence pertaining to the rules and regulations of the railway company which was introduced on the trial of this case, was introduced on the trial of the original case, and was before this court when it wrote the former opinion; and, there being no substantial difference between the evidence, it is our duty to apply the well settled rule which we have so frequently affirmed, that the former opinion contains the law of the case.

In I. C. R. R. Co. v. Long, 140 Ky., 170, we said:

"The facts on this trial were substantially the same as on the first trial; there was no substantial change in the testimony, and no materially new testimony introduced. The ruling upon the second appeal must, therefore, be the same we made upon the first appeal."

See, also, Slaughter v. Commonwealth, 152 Ky., 128.

After a careful consideration of this record, and comparing it with the evidence upon the first trial, we feel constrained to repeat what we there said, that the proximate cause of Helm's injury was his placing himself in a place of danger without taking proper precaution for his own safety; and, that being true, his injury was not caused by the failure of any duty which the company owed him.

Judgment affirmed.