# Louisville & Nashville Railroad Company v. Mink.

(Decided March 5, 1918.)

## Appeal from Whitley Circuit Court.

1. Master and Servant—Appeal and Error.—Where the facts on a second or subsequent appeal are substantially the same as those considered on the first appeal, the law as announced in the first opinion is the law of the case in all subsequent trials by either the lower or appellate court; but if the testimony on a subsequent hearing is substantially different from what it was on the first trial, the above rule, which is known as "The Law of the Case" rule, will not apply, and the case should be disposed of accord- ing to the principles of the law, regardless of the first opinion. In the first opinion the judgment was reversed because there was no evidence showing when the thing producing the injury became dangerous so that its condition might have been dis- covered by the master through the exercise of ordinary care, but on the second trial there was testimony showing that the dangerous condition existed for as much as twenty-four hours before the accident. Held, that this produced a substantial difference in the testimony upon the two hearings, and upon the last trial it was for the jury to determine under appropriate instructions whether the master exercised ordinary care to dis- cover the danger.

2. Master and Servant—Instruction.—An instruction which predi- cates liability if the defendant knew, or by the exercise of ordinary care could have known, of the danger is not prejudicial, because there was no direct testimony of the actual knowledge of the danger, and the verdict of the jury against the defendant was necessarily based upon his failure to exercise ordinary care to discover the danger.

3. Damages—Excessive Damages.—Where plaintiff, a brakeman, was knocked down on top of a car by colliding with a telephone cable which had been permitted to sag low enough to reach him while standing, and sustained a strain to his neck, back and side, and the testimony tended to show that he was thereby disabled from lifting heavy objects and performing any work requiring such lifting, and that he suffered considerable pain, was detained indoors for about ten days or two weeks, and still suffers from the effects of his injury, a verdict in his favor for $1,350.00 will not be set aside as being excessive, since it does not appear that it was given under the influence of prejudice or passion on the part of the jury.

BENJAMIN D. WARFIELD and HIRAM H. TYE for appellant.

SAWYER A. SMITH and J. B. SNYDER for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellee Mink, who was plaintiff below, on August 16, 1914, was in the employ of the appellant, Louisville & Nashville Railroad Company, defendant below, as brakeman on a freight train. The crew consisted of an engineer, fireman, conductor, and a rear and front end brakeman, the plaintiff filling the latter position. In approaching a stop it was usually the duty of the front brakeman especially to be on top of the train for the purpose of either giving or receiving necessary signals to or from other members of the crew. While his train, which was the first section of No. 90 traveling from Norton, Virginia to Corbin, Kentucky, through Middlesboro, Barbourville, and other intervening stations, was approaching the depot at Middlesboro the plaintiff was at his usual place on top of the train near the front end of the first car next to the tender. He was looking toward the rear of the train, which consisted of twenty-eight cars and a caboose, to receive any signals which might be given by the conductor or the rear-end brakeman. The train was traveling, according to his testimony, at a speed of about twelve miles per hour, but according to other witnesses only about six miles per hour, and while he was looking toward the rear of the train he came in contact with a telephone cable which struck him on the left side of the head just below the ear and knocked him down upon the top of the car. According to his testimony he was unconscious for a few seconds and was prevented from falling between the cars only by the wheel brake on the rear-end of the car upon which he was riding, the place where he was struck being about one-third of the length of the car from its front end. For the injuries he sustained he filed this suit, and upon trial recovered a judgment for $4,000.00, which upon appeal to this court was reversed in an opinion reported in 168 Ky. 394. On the second trial plaintiff recovered a judgment for $1,350.00, and complaining of it this appeal is prosecuted by the appellant.

On the first trial, as well as on the second one, the evidence showed that the cable which produced the injury was owned by the Home Telephone Company, with which the defendant had no connection, and therefore had no control over either the construction or the maintenance of the cable. It was attached to hangers, which in turn were screwed to posts on either side of the track and occupied an elevation when so constructed of about twenty-

three feet above the track, which was amply sufficient to enable one standing upon a freight car to pass under it unmolested. The east end of the cable had become detached from the post and had fallen several feet below to some telegraph wires running parallel with the railroad track on that side. While in this position it was not elevated above the track more than sixteen or eighteen feet, which was not sufficient to make a clearance for one standing upon a car passing under it. There was no evidence on the first trial showing when the cable had fallen from its attachment so as to menace the safety of the railroad employees, and since the cable was not owned, managed or under the control of the defendant, this court in the first opinion declined to apply the doctrine of *res ipsa loquitur*, as was insisted upon by the plaintiff. This refusal prevented a *prima facie* case of negligence on the part of the defendant arising from the mere fact of the cable being out of repair and in a dangerous position. With this feature of the case eliminated, it was determined by this court that the only negligence of which the defendant could be guilty under the circumstances was its failure to exercise ordinary care to discover the dangerous position of the cable in time to repair it and make it safe, or to remove it in some way as a menace to the safety of the employees upon its trains. But the court held that this measure of duty on the part of the defendant could not be applied under the facts as then disclosed, because there was an entire absence of testimony as to *when* the cable became detached and therefore dangerous, and on this point said:

"The cable became a menace to appellant's employees the moment it came within the space occupied by appellant in the movement of its trains, and from then on appellant's duty of inspection demanded that appellant should have discovered it as soon as it could have been done by the use of ordinary care, and if said cable had been down, as it was when it struck appellee, or even loose from its support, for a sufficient time for appellant in the exercise of ordinary care to have discovered it, appellant would be liable, but it is here that appellee's evidence failed. There is absolutely no evidence when the cable sagged, and from the evidence in the case it might reasonably be concluded to have done so at the very instant it struck appellee. If this were true then, of course, appel-

lant could not by the exercise of ordinary care have discovered it.''

On the second trial the plaintiff introduced for the first time a witness by the name of Poindexter, whose testimony, if true, supplied the omission pointed out in the first opinion and did ''show how long before this accident the cable had sagged to the position where it became a menace to appellant's employees upon the top of its trains passing under the cable,'' and which testimony removed the objection to the first judgment that ''there is absolutely no evidence when the cable sagged.'' The substance of Poindexter's testimony is that on Saturday before the accident, which occurred on Sunday, at about six o'clock a. m., he went from Barbourville, near which place he lived, to Middlesboro, and that at nine o'clock a. m. of that day he went to the depot at the latter place to board a train for his return trip but it had passed, and while there he and a friend who is now in the United States army in walking around the depot noticed the cable in its fallen down condition, and that it was then not exceeding sixteen or eighteen feet above the rails of the track. When the train on which plaintiff was hurt was passing through Barbourville the following Sunday, Poindexter noticed the evidence of plaintiff's injury, and upon inquiry learned that he had been hurt by the cable at Middlesboro, whereupon the witness told plaintiff what he had seen the day before. At that time plaintiff did not know the name of the witness or where he lived, and he offers this as an excuse for not having the witness present at his first trial. There is no positive evidence contradicting the testimony of Poindexter concerning the condition of the cable as testified to by him on Saturday morning before the injury the next day between twelve and one o'clock, except negative and somewhat vague testimony given by the section boss and the track walker at Middlesboro to the effect that they did not see the fallen condition of the cable at any time after Poindexter claims to have seen it until after the accident. They show that they could have seen it had they looked, but neither of them—nor does any other witness—state that they made an actual observation of the cable between those times. In fact the track walker positively states that he did not look at the cable while performing his duties as such employee, and on the first trial the section boss stated positively that he did not notice the cable between

the times mentioned. It is shown in the testimony that some twenty-five or more trains passed the point within twenty-four hours, the last one passing there just preceding the accident was a freight train going south about an hour before. It was the duty of the brakeman of that train to be on top of it, and if he had been he would have discovered the condition of the cable if it had been down. He did not make such discovery, and it is argued that this is positive testimony to the effect that Poindexter was either mistaken or is testifying falsely. But no such conclusion is justified by the record, because that witness, although it was perhaps his duty to be on top of his train, nowhere says he occupied that place at that point. On the contrary, he says that sometimes he was either in the engine or the caboose when the train was passing there and may have been so located at the time. The members of the crew of that last train passing the point are the only witnesses introduced by the defendant, although, as stated, perhaps as many as twenty-five trains passed the point after the time when Poindexter says he saw the cable down.

It must not be forgotten that although the cable in its fallen condition would come in contact with one standing on top of a car, yet it was high enough to permit a train to pass under it. The testimony of the telephone men corroborate that of Poindexter as to the position of the cable in its fallen condition, and upon the whole case we do not find sufficient testimony in the record, either direct or circumstantial, to authorize the jury or this court upon appeal to discard his testimony as being wholly incredible. On the contrary, we find corroborating circumstances entitling it to belief, although his statement that he went to Middlesboro on the day in question "just to be going" is not altogether convincing. These matters, however, were preeminently for the jury. It has shown by its verdict that it accepted this new testimony, and under the well known rules of practice in this state we are not authorized to disturb its finding upon this issue.

Counsel for appellant insist that this appeal presents conditions where "The Law of the Case" rule should be applied, and in support of that contention he cites many cases from this court, among which are Louisville & Nashville Railroad Company v. Schmetzer, 94 Ky. 424; L. & N. R. R. Co. v. Ricketts, 52 S. W. 939; L. & N. R. R.

Co. v. Hocker, 111 Ky. 707; Quisenberry v. Chenault, 143 Ky. 312; Samuels & Co. v. Gilmore & Co., 142 Ky. 166; Helm v. C. N. O. & T. P. Ry. Co., 156 Ky. 240; Keiffer v. L. & N. R. R. Co., 143 Ky. 383; I. C. R. R. Co. v. France's Admr., 123 S. W. R. 336; Hopkins v. Adam Roth Grocery Co., 105 Ky. 357, and Beaver's Admr. v. Proctor Coal Co., 159 Ky. 578. He might have cited, in support of that rule, many more cases from this court, as well as from others, and also from all the textwriters upon the subject. That rule, as announced by the cases, *supra,* is that the law as settled by the first appeal is the law of that case, "right or wrong," upon all subsequent trials, either in the lower court or upon appeal, where the testimony presents substantially the *same* state of facts. The converse of the proposition is equally true that where the testimony upon any subsequent trial is substantially *different* from that heard upon the first one, the court is not bound by anything which may have been said on the first hearing of the case upon the record as then presented. Many cases besides those above could be cited in support of the converse of the rule which we have just stated, but it is so fundamental and so well understood by courts and practictioners that we deem it unnecessary to thus encumber this opinion. We find, then, that the only reason for reversing the first judgment based upon the objections that "there is nothing in the evidence to show how long before this accident the cable had sagged," and "there is absolutely no evidence when the cable sagged," &c., as found in the former opinion is entirely removed by the testimony of Poindexter, which not only rendered the testimony upon the last trial substantially *different* from that heard upon the first one, but put an entirely different phase upon the case, and the court did not commit error in refusing to sustain defendant's motion for a peremptory instruction in its favor.

It is conceded (as was held on the former appeal) that defendant owed to its employees on its train to which plaintiff belonged the duty to exercise ordinary care to discover dangers and to render reasonably safe the place where plaintiff was required to perform his duties. Whether by the exercise of such care it could have discovered the danger which produced the accident from the time Poindexter first saw it, as he testified, and could have remedied it before the plaintiff was hurt, was a question peculiarly for the jury.

The court gave to the jury five instructions, defendant offering none except a peremptory one, which, as we have seen, was properly overruled. To all of those given, except No. 5, the defendant objected, and its objections being overruled, it excepted. However, in the brief of counsel only No. 1 given by the court is criticised, and this not severely, since indeed it could not well be. That instruction is the usual one given in such cases and it predicated liability upon the fact that defendant "or its agents in charge of the right of way at the point mentioned knew of the dangerous condition of the said cable, if it was dangerous, or by the exercise of ordinary care could have known thereof," &c. The criticism of this instruction is aimed at that part of it fixing liability on the defendant if it or its agents in charge of its right of way "knew of the condition," &c., it being insisted that there was no evidence that anyone connected with the defendant knew previous to the accident that the cable had fallen, and that it was therefore error to predicate liability upon such actual knowledge.

Answering this, we might say that the record is not altogether barren of testimony and circumstances from which the jury might be authorized to find such actual knowledge, but if it were, we are not to presume that the jury based its verdict upon such actual knowledge if there was no evidence to support it, but rather would it be concluded that the verdict was based upon the other condition amply supported by the testimony, viz.: "Or by the exercise of ordinary care could have known thereof." If therefore the criticism be well founded, the error is of such a nature as not to be prejudicial.

Lastly, it is complained that the verdict is excessive. On that point it is fairly well shown that the plaintiff received a considerable wrench by his contact with the cable to his neck, side and back. While the skin was not penetrated at the place, the cuticle was roughed up and made to inflame. He suffered considerably, and had three doctors to treat him at different times. He worked no more at his old job, but after some weeks he tried to do work in a coal mine, but the work was found to be too heavy and he was unable to perform it. His neck, side and back still pain him, and he is practically disabled, according to his testimony, from lifting heavy objects. This disqualifies him from doing many kinds of work. He was stout and healthy before being injured, and while

there is a conflict in the testimony, yet there is some evidence indicating that his injuries because of strains might be permanent. Upon issues of this kind the jury is eminently qualified to pass, under all the facts and circumstances, and the rule is that unless the verdict is so large as to strike one at first blush that it was rendered under the influence of passion or prejudice on the part of the jury it will not be disturbed as being excessive. Under this rule, and after a careful consideration of the record, we do not feel that we would be authorized to reverse the judgment upon this ground.

Upon the whole case we find no substantial error against the rights of the defendant, and the judgment is therefore affirmed.